A91A0546, A91A0725. PATTERSON v. BUTLER et al.
(409 SE2d 531)

ANDREWS, Judge.

Patterson, proceeding pro se, appeals the trial court's grant of a directed verdict and award of attorney fees and expenses on his multi-count complaint against Clayton County, seven members of the county police force, the county commission chairman and the county director of licensing.

"In considering a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion." *Brown v. Commercial Credit &c. Corp.*, 172 Ga. App. 568, 572 (2) (323 SE2d 822) (1984). Viewing the evidence in the light most favorable to Patterson, the evidence at trial established that Patterson operated, managed and was the corporate president of "Mr. P's," a Clayton County restaurant, lounge and entertainment center which

served alcohol and maintained pool tables and coin operated game machines.

In August 1986, after receiving several complaints about Mr. P's and its drunken patrons' behavior, the Clayton County Police Department launched an investigation of the establishment. The ensuing 16-day undercover investigation revealed various criminal activity at Mr. P's, including gambling and evidence of drug transactions. In addition to two undercover detectives inside Mr. P's, policemen inside a van conducted covert surveillance of Mr. P's parking lot on two occasions.

During this same period, Patterson claimed that rumors were spreading that the police planned to shut down Mr. P's. Evidence at trial indicated that one defendant, a police officer who was not involved in the investigation, stated that he wanted to see the business closed. Patterson also claimed that he received hints that he could pay the police department to stop the investigation.

As a result of the undercover investigation, on the evening of September 5, 1986, and into the early morning of September 6, the police raided Mr. P's. The "raid," which lasted about 45 minutes, consisted of three uniformed police officers entering Mr. P's, taking photographs of the establishment and the customers, and issuing Patterson a citation for violation of a county ordinance. In conjunction with the police activity inside, outside a police helicopter hovered around Mr. P's for about ten minutes shining a bright light into the parking lot. The police did not arrest anyone during the raid and no evidence was seized.

At trial, Patterson introduced little evidence of any further police activity at Mr. P's after September 6. Three witnesses who worked at Mr. P's claimed that after the raid, police helicopters circled the Mr. P's parking lot on three or four occasions.

During the fall of 1986, the county officials suffered confusion over the relationship between the state billiard statute (OCGA § 43-8-1) and the county ordinances governing the management of coin-operated amusement machines. In December 1986, after referring the matter to the Solicitor and determining that the state statute preempted the ordinance, the county officials cited Patterson with four violations of the billiard statute which they had observed in August 1986.

Patterson filed this lawsuit in January 1987 and then applied for some of the county licenses required to run his business. He was denied the 1987 licenses, yet he continued to operate the business.

On February 18, 1987, Patterson was tried in state court on the five charges against him. Patterson's motion for directed verdict was granted on one of the billiard charges on the first day of trial. Before the second day of trial began, Patterson pled guilty to the ordinance charge and the prosecution dropped the remaining three billiard

charges.

According to Patterson, the result of the police and county actions outlined above was to reduce Mr. P's business, causing more than $2 million in lost profits and $4.5 million in emotional distress. Patterson filed a multi-count complaint, seeking nominal, compensatory and punitive damages claiming that the defendants had formed a conspiracy to try and force him out of business. Patterson originally named as defendants 18 individual county officials, but by the time of trial the number of individual defendants had been reduced to nine. At the close of Patterson's evidence, the trial court directed a verdict against him.

1. In his first enumeration of error, Patterson claims that the trial court erred by refusing to grant his motion for summary judgment. Patterson argues that since the defendants did not file a pleading entitled "Statement of Disputed Facts" with their responsive brief, his motion should have been granted. The trial court's denial of summary judgment was proper, since the record amply demonstrated the existence of facts in dispute. See generally *Fletcher v. Ford*, 189 Ga. App. 665 (2) (377 SE2d 206) (1988); *Hill v. Loren*, 187 Ga. App. 71 (3) (369 SE2d 260) (1988).

2. In his second enumeration of error, Patterson claims that the trial court "erred by ignoring conflicts in the evidence, resolving conflicts in the evidence, construing evidence most favorably to movants, and drawing inferences in favor of movants." In determining the validity of this enumeration, we must examine separately each count of Patterson's complaint.

(a) The grant of the directed verdict on Patterson's claim for malicious prosecution was proper since one of the essential elements of this cause of action was missing. In order to maintain an action for malicious prosecution, a plaintiff must show the termination of the criminal prosecution in his favor. See generally OCGA § 51-7-40; *Medoc Corp. v. Keel*, 166 Ga. App. 615 (305 SE2d 134) (1983). Patterson was unable to satisfy this requirement since he pled guilty at his trial to the Clayton County ordinance charge. See *Young v. City of Atlanta*, 631 FSupp. 1498, 1505-1506 (N. D. Ga. 1986); see generally *Commercial Plastics &c. Corp. of Ga. v. Molen*, 182 Ga. App. 202 (1) (355 SE2d 86) (1987). We find no merit in Patterson's argument that because the citations were issued on different dates they constituted separate prosecutions, since the charges resulted from one investigation.

(b) Similarly, the trial court also properly directed a verdict on Patterson's claim that his property was taken without just compensation. "The constitutional provisions prohibiting the state or subdivisions from taking private property for a public purpose without just and adequate compensation are applicable only when the acts consti-

tute a 'taking' of the property within the meaning of the law. (Cits.)" *Bray v. Houston County*, 180 Ga. App. 166, 167 (348 SE2d 709) (1986); see Ga. Const. 1983, Art. I, Sec. III, Par. I; *Trussell Svcs. v. Montezuma*, 192 Ga. App. 863, 864 (386 SE2d 732) (1989). Here there was no evidence that Patterson's property was "taken," or even damaged, so as to entitle him to compensation. In contrast to Patterson's claim, the evidence showed that the officers involved in the investigation of Mr. P's were acting pursuant to the police powers of the state. See *Bray*, supra; *McCoy v. Sanders*, 113 Ga. App. 565 (148 SE2d 902) (1966).

(c) The trial court properly directed a verdict on Patterson's claim that the defendants' actions constituted a malicious interference in the use and enjoyment of his property. Georgia recognizes a cause of action where one maliciously, wrongfully and with intent to injure, harms the business of another. *Bodge v. Salesworld, Inc.*, 154 Ga. App. 65 (267 SE2d 505) (1980). Here, we find no evidence of the requisite malice and intent necessary to sustain this count.

(d) The trial court properly granted the motion for directed verdict with respect to Patterson's claim of a violation of public duty. This claim seems to be that the defendants willfully and wantonly violated their public duty by injuring Patterson's business, depriving him of the use and enjoyment of his property and depriving him of equal protection of the laws under the Ga. Const. 1983, Art. I, Sec. I, Pars. I and II. The part of this count which alleges that the public officials deprived him of the use and enjoyment of his property is discussed in subparts (b) and (c) above. As is discussed above, this part of the claim is without merit since there was no "taking" shown and because there was no evidence of intent to interfere with his business.

The portion of this count which alleges that Patterson was denied equal protection of the laws is also without merit. A successful equal protection claim requires a showing of purposeful discrimination. *Spencer v. McCarley Moving &c. Co.*, 174 Ga. App. 525 (330 SE2d 753) (1985); *Smith v. State of Ga.*, 684 F2d 729 (11th Cir. 1982), appeal after remand, 749 F2d 683 (11th Cir. 1985). The claim requires that the action taken by the government was arbitrary and illegal. See *Spencer*, supra at 528. Absent an implication of a fundamental right or a suspect classification, local economic regulation is presumed constitutional under equal protection if it is rationally related to legitimate state interests. *Silverstein v. Gwinnett Hosp. Auth.*, 861 F2d 1560 (11th Cir. 1988).

Here, we find no evidence that the county's treatment of Mr. P's was arbitrary or that it differed from that of other establishments for any constitutionally impermissible reason. To the contrary, the evidence indicated that the county's investigation of Mr. P's was reasonable and was responsive to numerous complaints about the business.

(e) The trial court properly directed a verdict on Patterson's hodgepodge claim under 42 USC § 1983. Essentially, this claim alleges that the police conspired to force him out of business and thereby violated his constitutional right to pursue an occupation. In appropriate circumstances, 42 USC § 1983 allows redress for arbitrary interference in, and harassment of, a business by the police. See, e.g., *Benigni v. City of Hemet*, 879 F2d 473 (9th Cir. 1988)[1]; *Lykken v. Vavreck*, 366 FSupp. 585, 587-599 (D.C. Minn. 1973).

In order to pursue an action of this nature, a plaintiff " 'must show (1) "that he has been deprived 'of a right secured by the "constitution and laws" of the United States,' " and that (2) the defendant acted under color of state law.' " *Franklin v. Piggly Wiggly*, 175 Ga. App. 20, 21 (332 SE2d 329) (1985). We can find no deprivation of a federal constitutionally protected interest resulting from an abuse of governmental power sufficient to maintain this claim. See *Rymer v. Douglas County*, 764 F2d 796, 801 (11th Cir. 1985). Furthermore, there was no evidence that the county and police actions constituted a deprivation of Patterson's constitutional rights pursuant to an impermissible or corrupt policy which was intentional and deliberate. See *Cave Spring v. Mason*, 252 Ga. 3 (310 SE2d 892) (1984). As a matter of law, the evidence Patterson presented did not rise to the level of egregiousness necessary to maintain an action under § 1983 and the trial court properly directed the verdict on this claim.

(f) The trial court was correct in directing a verdict on Patterson's due process claim. "Constitutional due process of law includes notice and hearing as a matter of right where one's property interests are involved." *Hamilton v. Edwards*, 245 Ga. 810 (267 SE2d 246) (1980). There was no evidence that the notice given to Patterson or his opportunity for a hearing were constitutionally deficient.

In conclusion, Patterson's claim that the court erred in its evaluation of the evidence is without merit since the trial court properly directed a verdict as to each element of Patterson's claim.

3. In four additional enumerations of error, Patterson claims that the trial court erred in directing the verdict since there was evidence of a conspiracy between the defendants. Although Patterson appears to concede that there was no direct evidence of a conspiracy, he argues that the logical inference from the facts would be that a conspiracy existed.

We do not agree. "A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some unlawful

---

[1] It is important to note that in *Benigni*, supra, the City failed to move for a directed verdict, and therefore the inquiry on appeal was limited to whether there was any evidencce to support the verdict. Id. at 476.

act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. [Cits.] Thus, where the act of conspiring is itself legal, the means or method of its accomplishment must be illegal." (Cits.) *Cook v. Robinson*, 216 Ga. 328, 329 (1) (116 SE2d 742) (1960).

Because there was neither evidence of a tort nor evidence that the county or police officers acted to achieve an unlawful end or a lawful end by unlawful means, the direction of the verdict was proper.

4. In four other enumerations of error, Patterson claims that in various ways, the trial court misunderstood the relevant immunity principles. Because of the result reached in Division 2 above, we need not address the immunity principles relevant to this case.

5. In his eleventh and sixteenth enumerations of error, Patterson claims that the trial court erred in finding no evidence of his damages. Because of our conclusions above, we need not address these enumerations.

6. In his thirteenth enumeration of error, Patterson complains of various evidence which he claims was erroneously admitted. "Where a case is tried before a judge without a jury, it is presumed that judgment was rendered only upon the competent and legal evidence before him; consequently, if illegal evidence was admitted, it does not require a new trial." (Citations and internal quotations omitted.) *C & S Bank of Dublin v. Morris &c. Bldg. Corp.*, 243 Ga. 169, 170 (2) (253 SE2d 89) (1979); see also *Cannon v. Boesger*, 172 Ga. App. 488 (323 SE2d 687) (1984). Here, we follow this presumption that the judge relied only upon admissible evidence in granting the directed verdict and find this enumeration is without merit.

7. Patterson's fourteenth and fifteenth enumerations argue that the trial court erred in determining that the defendants were not bound by certain pleadings. We are unpersuaded by this argument.

Although Patterson's assertion that an admission in judicio is conclusive as a matter of law is correct, the materials here were not conclusive admissions, as Patterson contends. *Piedmont Aviation v. Washington*, 181 Ga. App. 730 (353 SE2d 847) (1987); OCGA § 24-3-30. Similarly, the trial court's refusal here to consider conclusive a non-party's statements was proper. See generally OCGA § 24-3-31; *Gregory v. J. T. Gregory & Son*, 176 Ga. App. 788 (338 SE2d 7) (1985).

8. In a separate appeal, which was consolidated with the rest of the case after the notices of appeal were filed, Patterson enumerates as error the trial court's post-trial award of attorney fees and expenses to the defendants under OCGA § 9-15-14 (a). Under the in-

stant circumstances this issue is directly appealable. *Rolleston v. Huie*, 198 Ga. App. 49 (4) (400 SE2d 349) (1990).

Patterson, citing *Felker v. Fenlason*, 197 Ga. App. 476 (398 SE2d 754) (1990), argues that because the defendants' motion for summary judgment was not granted in its entirety, the award of attorney fees was improper. We do not agree.

Although in *Felker*, supra, this court determined that the trial court's denial of the defendants' motion for summary judgment was " 'sufficient to constitute a "binding determination" that (that claim) did not lack substantial justification so as to render it frivolous, groundless or vexatious, *Biosphere Indus. v. Oxford Chemicals*, 190 Ga. App. 613, 615 (379 SE2d 555) (1989),' " a different conclusion is mandated in this case. We do not read *Felker* as prohibiting an award of attorney fees under OCGA § 9-15-14 simply because a claim has survived a motion for summary judgment.

Here, in contrast to *Felker*, the trial court granted defendants' motion for summary judgment as to one count of the complaint and also dismissed two of the defendants from the case. At the conclusion of Patterson's evidence at trial, the court granted the defendants' motion for directed verdict, and ruled that although Patterson's complaint alleged facts which if believed would have afforded a basis for relief, that after more than a week of presenting evidence, he had failed to present any believable facts with respect to any of his claims. Additionally, the trial court found that Patterson had made inaccurate representations regarding his claim, that he had totally failed in presenting evidence of damages and that the complaint was in bad faith, was brought for purposes of delay, and was groundless and vexatious in nature. Accordingly, we find no abuse of discretion in the trial court's award. See *Griffiths v. Phenix Supply Co.*, 192 Ga. App. 651 (385 SE2d 789) (1989); *Haggard v. Bd. of Regents*, 257 Ga. 524 (360 SE2d 566) (1987).

*Judgment affirmed in Case No. A91A0546 and in Case No. A91A0725. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JULY 1, 1991 —
RECONSIDERATION DENIED JULY 25, 1991 — ▮▮▮▮▮▮▮

James Patterson, *pro se.*

England, Weaver & Kytle, George M. Weaver, Foster & Foster, Michael D. Anderson, Meadows & Associates, Richard D. Schrade, Jr., for appellees.