S97A0678, S97A0870. CITY OF LILBURN v. SANCHEZ et al.
(two cases).
(491 SE2d 353)

SEARS, Justice.

This appeal is brought by the City of Lilburn ("the City") from the trial court's order declaring unconstitutional the City's municipal ordinance requiring land lots at least one acre in size for the keeping of a Vietnamese pot-bellied pig as a domestic pet. Upon review, we are satisfied that a rational relationship exists between the ordinance and the legitimate governmental goal of reducing the substantial negative impacts these animals might have upon residential communities. We also are convinced that in ruling otherwise, the trial court improperly usurped the authority of the City's administrators, and erroneously substituted its own judgment for that of a legislative body. Therefore, we reverse.[1]

The Sanchez family home is situated on a .24-acre lot, and is located within one of the City's subdivisions. The Sanchezes owned a Vietnamese pot-bellied pig, Eugenia, which they kept as a domestic pet. Eugenia spent much, but not all, of her time on the family's .24-acre lot. After adjoining property owners complained, the City cited and fined the Sanchezes for violating its municipal crime ordinance regulating the ownership of pigs:

(A) It shall be unlawful to keep hogs or pigs within the city.
(B) A purebred Vietnamese pot bellied pig is considered a household pet, and is allowed, provided that the lot is at least one acre in size, no hobby breeding, and only one pig shall be allowed per lot. All adjoining property owners shall sign a statement that they have no objection to the pig.

Lilburn City Code, § 11-3-3.

The Sanchezes sought a declaratory judgment that the ordi-

---

[1] This Court granted the City's application for discretionary appeal in Case No. S97A0678, and the City also filed a notice of direct appeal in Case No. S97A0870. The cases have been consolidated for purposes of this appeal. Because the Sanchezes have not attacked a zoning ordinance, but rather have sought to have a criminal ordinance declared unconstitutional, the trial court's order is directly appealable pursuant to OCGA § 5-6-34, and does not fall under OCGA § 5-6-35 (a) (1)'s discretionary appeal requirements. Therefore, Case No. S97A0678 is dismissed, and the direct appeal is considered on its merits.

nance was unconstitutional, claiming that it was not rationally related to an articulable legislative purpose. After a hearing, the trial court upheld those portions of the ordinance allowing the keeping of Vietnamese pot-bellied pigs, classifying them as household pets, prohibiting their hobby breeding, and allowing only one pig per lot. However, the trial court declared unconstitutional the ordinance's requirements that pot-bellied pigs be kept (1) only on lots at least one acre in size, and (2) only with the consent of all adjoining property owners. In so doing, the trial court utilized the "as applied" standard for determining the constitutionality of zoning ordinances, as set forth in *Gradous v. Bd. of Commrs.*[2] On appeal, the City contends that the trial court erred in applying the wrong legal standard, and that once the proper legal standard is applied, the constitutionality of the ordinance's acreage requirement is clearly established. As explained below, we agree.[3]

1. The Sanchezes' complaint alleged that Lilburn's criminal ordinance regulating pigs within the City, on its face, exceeds the scope of the City's police powers and therefore violates substantive due process as applied to all residents who own pot-bellied pigs. The Sanchezes did not claim that the City had violated its authority to zone property for specific purposes. Before filing their complaint, the Sanchezes did not seek an administrative adjudication as to the impact of the City's ordinance on their property rights in particular, as would have been required if this were a zoning challenge.[4] Furthermore, while the ordinance at issue is regulatory in nature, it does not regulate by classifying property into separate districts, as do zoning ordinances.[5] However, the trial court resolved the matter by applying the standards set forth by this Court in *Gradous*, supra, for determining the constitutionality of a municipal zoning ordinance.[6] However, it is undisputed that this matter concerns a criminal, and not a zoning, ordinance. Therefore, we find that the trial court erred by failing to apply the proper standard for resolving a substantive due process challenge to a municipality's enactment of criminal legislation pursuant to its police power, and we will resolve the matter by

---

[2] 256 Ga. 469, 470 (349 SE2d 707) (1986).

[3] The City does not appeal the trial court's ruling that the ordinance's requirement that pot-bellied pigs be kept only with the consent of all adjoining property owners is unconstitutional.

[4] See *Trend Dev. Corp. v. Douglas County*, 259 Ga. 425 (383 SE2d 123) (1989). See also n. 1, supra.

[5] Zoning is defined as "the division of a city . . . into districts and . . . regulations prescribing uses to which buildings [and real property] within designated districts may be put." Black's Law Dictionary, p. 1450 (West 1979).

[6] The *Gradous* test balances the benefit accrued to the public by the zoning ordinance against the detriment suffered by the individual claiming a constitutional deprivation. 256 Ga. at 471.

relying on those proper standards.

2. Because ownership of a Vietnamese pot-bellied pig is not a fundamental right, and because pot-bellied pig owners are not a suspect class, the City's ordinance must be examined under the rational basis test.[7] Under that test, a municipal ordinance is a valid exercise of the police power if it is substantially related to the public health, safety, or general welfare.[8] In this regard, any plausible or arguable reason that supports an ordinance will satisfy substantive due process.[9] So long as an ordinance realistically serves a legitimate public purpose, and it employs means that are reasonably necessary to achieve that purpose, without unduly oppressing the individuals regulated, the ordinance must survive a due process challenge.[10] The rational basis standard is the least rigorous test of constitutional scrutiny. It does not require that an ordinance adopt the *best,* or even *the least intrusive,* means available to achieve its objective. To the contrary, the means adopted by an ordinance need only be reasonable in relation to the goal they seek to achieve.[11]

Only if the means adopted, or the resultant classifications, are irrelevant to the City's reasonable objective, or altogether arbitrary, does the ordinance offend due process.[12] Otherwise, it is established that *"the courts have no right to interfere with the exercise of legislative discretion."*[13] Furthermore, where "legislative action is within the scope of the police power [as exists here], fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of the courts, but for that of the legislative body on which rests the duty and responsibility of [the] decision."[14]

The Lilburn city ordinance obviously serves a legitimate public purpose, as it regulates and controls some of the more unpleasant aspects of living with or near swine. Specifically, it was established before the trial court by expert veterinary testimony that the smell emanating from pot-bellied pig waste is much stronger than that

---

[7] See *City of Atlanta v. Watson,* 267 Ga. 185, 187 (475 SE2d 896) (1996).

[8] *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 367, 387 (47 SC 114, 71 LE 303) (1926). See *Hayes v. Howell,* 251 Ga. 580 (308 SE2d 170) (1983) (property is held subject to legislative regulation by the police power in order to (1) protect the public health, (2) implement environmental regulations, or (3) abate nuisances).

[9] See *Flemming v. Nestor,* 363 U. S. 603, 611-612 (80 SC 1367, 4 LE2d 1435) (1960).

[10] See *Lawton v. Steele,* 152 U. S. 133, 137 (14 SC 499, 38 LE 385) (1894); *Cannon v. Coweta County,* 260 Ga. 56, 58 (389 SE2d 329) (1990); Stoebuck, Police Power, Takings & Due Process, 37 Wash. & Lee L. Rev. 1057, 1058 (1980).

[11] *Flemming,* supra; *Lawton,* supra; *Cannon,* supra.

[12] See *Foster v. Ga. Bd. of Chiropractic Examiners,* 257 Ga. 409, 419 (359 SE2d 877) (1987).

[13] (Emphasis supplied.) *Dixon v. City of Perry,* 262 Ga. 212, 213 (416 SE2d 279) (1992); see *Foster,* supra.

[14] *Standard Oil Co. v. City of Marysville,* 279 U. S. 582, 584 (49 SC 430, 73 LE 856) (1929).

associated with dogs and cats. What's more, evidence showed that pot-bellied pigs generate manure in quantities four times greater than dogs, and that, because they require greater care than other domestic pets, pot-bellied pig owners are more likely to neglect their responsibilities than are other pet owners. The impact of these organic statistics on the .24-acre lot where the Sanchez family kept their porcine pet, Eugenia, and on the surrounding property owners was evidenced by the testimony of the Sanchezes' neighbor, Hogan. Hogan testified that his house stands 15 to 20 feet from the Sanchez home, and that the smell associated with Eugenia, and her by-product, was reminiscent of a pig sty, and unbearable to the point of nauseating him. Hogan also testified that the smell of pig manure sometimes permeated the interior of his home.

Expert testimony also established that pot-bellied pigs are capable of transmitting more diseases to humans than are dogs. Furthermore, there are several bloodlines of these shoats, and, depending upon its genetic lineage, a pot-bellied pig can grow to a size anywhere between 30 and 150 pounds. Quite obviously, the larger the pig, the more severe its impact will be on both its owner's lot and on the surrounding properties. Based on the statistics discussed above, a medium-to-large size pig could easily transform a suburban lot such as the Sanchezes' .24-acre parcel into a fetid barnyard within a matter of weeks.

Clearly, then, Lilburn has legitimate interests both in regulating the domestic keeping of pot-bellied pigs, and in minimizing their impact upon residential communities. Imposing a one-acre minimum requirement for the keeping of these animals is a reasonably necessary means of satisfying that interest. The one-acre requirement effectively regulates the domestic swine population in Lilburn by density, thereby satisfying at least two legitimate goals. First, because there are a finite number of one-acre lots within Lilburn's residential communities, the overall size of the pig population in Lilburn will be controlled, thereby limiting the number of surrounding properties that can be impacted by these pigs. Second, because pot-bellied pigs must reside on lots that are at least one acre, their impact on those lots will be dissipated over a greater area, minimizing the impact felt by neighboring property owners. Thus, the rational relation between the ordinance and its goals is clear.[15] That being so, and because no claim is made that the ordinance is arbi-

---

[15] We note that in other contexts, area and density restrictions routinely are implemented as valid exercises of a municipality's regulatory authority, so long as they further a proper purpose and are implemented in a constitutional manner, and they routinely are accorded a presumption of validity. See 3 Zieglar, Rathkopf's The Law of Zoning and Planning, § 34.03 [2].

trary on its face or as applied, the constitutionality of the City's criminal ordinance regulating the ownership of domesticated pigs is conclusively established.[16]

In ruling otherwise, the trial court emphasized isolated opinion evidence that in some instances, a large lot size, such as that required by the ordinance, may effectively cause a pig to grow larger than it otherwise might. However, there also was evidence that, depending upon its genetic make-up, a single pot-bellied pig may grow upwards of 150 pounds, presumably even if it lives on a smaller-sized lot. Thus, we believe that lot size is an incidental, rather than a primary, factor in determining how large a pot-bellied pig will grow. Furthermore, even if the one-acre requirement will in some instances produce larger pot-bellied pigs, that fact, standing alone, does not render the ordinance unconstitutional. As noted, the Due Process Clause does not require Lilburn to implement the *best* means of regulating pot-bellied pigs as pets; it need only adopt means that are reasonably necessary to decrease the overall impact of such domesticated pigs on Lilburn's citizens.[17]

Finally, in cases such as this one, courts are required to give due accord to the authority of city officials. As a reviewing court, our duty is only to determine whether, in enacting the ordinance, the City of Lilburn exercised its police power within the parameters of our State and Federal Constitutions. Fairly debatable questions as to the ordinance's reasonableness, wisdom, and propriety *"are not for the determination of the courts,"* but remain within the sound discretion of city leaders.[18] As discussed above, there was ample evidence before the trial court that in enacting the ordinance, the City of Lilburn properly exercised its police powers in a non-arbitrary manner, with an adequate factual predicate, and in reasonable furtherance of a legitimate goal. Whether the trial court, or this Court, appreciates, agrees with, or condones the City's action is altogether irrelevant — so long as the City acted constitutionally. We conclude that, by holding the ordinance was unconstitutional, the trial court improperly substituted its own judgment for that of the City's leaders.

*Judgment reversed. All of the Justices concur, except Hunstein and Carley, JJ., who dissent.*

---

[16] *Lawton,* supra; *Cannon,* supra.

[17] See *Flemming,* 363 U. S. at 611-612. Likewise, the trial court's statement that the ordinance was invalid because it did not require setbacks is irrelevant. While requiring that owners of pot-bellied pigs keep them a certain distance away from adjoining property lines might be one means of regulating their impact in residential communities, it certainly is not the only means of achieving that goal. Moreover, because setbacks have no effect on airborne stenches, they might be wholly ineffective in this instance.

[18] *Standard Oil Co.,* 279 U. S. at 584.

CARLEY, Justice, dissenting.

Because the majority has failed to apply the correct standard of review by determining whether the trial court's findings were clearly erroneous, the majority today has itself rendered a "clearly erroneous" decision on appeal. In my opinion, application of the correct standard of appellate review mandates an affirmance of the trial court's judgment in favor of the Sanchezes and against the City. Accordingly, I respectfully dissent.

"[T]he majority rule is that the unreasonableness of an ordinance need not appear on the face of the ordinance, but may be shown by evidence. . . ." 5 McQuillin, Municipal Corporations, § 18.24 (rev. 3d ed. 1996). See also 5 McQuillin, supra, § 18.26. Although we owe no deference to the trial court regarding the law, "we are bound by the trial court's findings of fact unless clearly erroneous. . . . [Cits.]" *Cannon v. Coweta County*, 260 Ga. 56, 58 (2) (389 SE2d 329) (1990). Here, the trial court found by clear and convincing evidence that the portion of the ordinance which requires a minimum one-acre lot size to keep a Vietnamese pot-bellied pig is not substantially related to the public health, safety, or general welfare. This finding is in accordance with the "substantive due process" test. *Cannon v. Coweta County*, supra at 57 (2). Under that test, the means adopted by the ordinance must have a real and substantial relation to the result sought to be obtained. *Nebbia v. New York*, 291 U. S. 502, 525 (54 SC 505, 78 LE 940) (1934); *Hayward v. Ramick*, 248 Ga. 841, 843 (1) (285 SE2d 697) (1982); *Eubanks v. Ferrier*, 245 Ga. 763, 766 (4) (267 SE2d 230) (1980).

The trial court heard evidence that, as the lot size increases, Vietnamese pot-bellied pigs which are kept outdoors may, in fact, grow even larger, and the quantity of the resulting fecal matter thus becomes greater. Construed most favorably for the Sanchezes, the evidence also demonstrated that the potential negative impact of the pigs was no greater than that of other household pets, and that the one-acre requirement, which did not apply to owners of other household pets, would not reduce the negative impact of any individual pig. Furthermore, the trial court was able to construe this evidence in the light of its own visit to the present home of the Sanchezes' pig. This "view" was made upon request of one party and with consent of both parties, as reflected by the record. After the view, the trial court commented that actually seeing the size of the pigs and the extent of run-off, odor, and rooting problems was much better than merely seeing photographs. As to the existence of any benefit from the one-acre requirement, the City's evidence indicated only that an overall larger area per pig, as with any household pet, may result in less negative impact overall. The trial court also relied on the absence in the ordinance of any set-back requirements for confining the pigs. Where, as

here, a municipal ordinance imposes a minimum acreage for the keeping of a certain household pet and further limits the number of those household pets per lot to only one, but the evidence shows that the minimum acreage requirement will not be effective in reducing the negative impact produced by each of the household pets, I believe that the trial court was authorized to find that the ordinance is unconstitutionally unreasonable and irrational in imposing the minimum acreage requirement, especially where set-back requirements would suffice to alleviate the negative impact. See *Avant v. Douglas County*, 253 Ga. 225, 226 (319 SE2d 442) (1984). Accordingly, in my opinion, the trial court was authorized to find by clear and convincing evidence that the one-acre requirement is not substantially related to the public health, safety, or general welfare.

However, I point out that affirmance of the trial court in this case would not mean that such a finding would be demanded as to all minimum acreage requirements for Vietnamese pot-bellied pigs in other jurisdictions in this state. Consequently, I express no opinion regarding the differing local circumstances which may arise in such other jurisdictions and I would hold only that, under the circumstances in *this* case, the trial court was authorized to find that the one-acre requirement imposed by the City was unconstitutionally unreasonable.

The majority, however, apparently would approve *any* such minimum acreage requirement so long as the enacting jurisdiction can provide *some* evidence that the minimum acreage requirement is substantially related to the public health, safety, or general welfare. Thus, the majority has severely limited the role of the trial court in a case of this type. From now on, whenever a trial court fulfils its role as factfinder by weighing the evidence in a constitutional challenge to a local ordinance based on substantive due process, any decision in favor of the challenger will inevitably result in an appeal and almost automatic reversal. Even though the trial court's findings of fact relate to a constitutional challenge, "[s]uch findings cannot be set aside by the appellate court unless found to be clearly erroneous." *City of Atlanta v. McLennan*, 240 Ga. 407, 409 (2) (240 SE2d 881) (1977). See also *Cannon v. Coweta County*, supra at 58 (2). Similarly, even where, as here, the standard of proof is the "clear and convincing evidence" test, the factfinding and weighing of evidence is to be done in the trial court and the appellate court's role is to defer to the lower court in the area of factfinding. *In the Interest of E.C.*, 225 Ga. App. 12, 19 (482 SE2d 522) (1997). "It is not our role on appeal to substitute our view of the evidence for that of the trial court. [Cit.]" *Cobb County Bd. of Tax Assessors v. Sibley*, 248 Ga. 383, 384 (2) (283 SE2d 452) (1981). The trial court, having viewed the premises where the Sanchezes' pig is now kept, was in a better position to form an opin-

ion as to the one-acre requirement than is this Court from the reported evidence alone. *Rogers v. Western & Atlantic R.*, 209 Ga. 450 (4) (74 SE2d 87) (1953). Although I may or may not have reached the same conclusion as the majority had I been the trial judge, it is clear that this Court should not disturb the trial court's detailed findings of fact which were based upon hearing and observing the sworn witnesses, reviewing the documentary evidence and attending the view. These findings are *not* clearly erroneous. See *Cobb County Bd. of Tax Assessors v. Sibley*, supra. " ' "On appeal, this court must not substitute its judgment for that exercised by the trial court when there is some support for the trial court's conclusion." ' " *Leventhal v. Seiter*, 208 Ga. App. 158, 164 (8) (430 SE2d 378) (1993). I think it ironic that, while accusing the trial court of substituting its judgment for the legislative decision of the City, the majority itself has acted in place of the trial court and has substituted its judgment for that of the trial court. Rather than properly affirming the judgment on the basis that the trial court's findings are not clearly erroneous, the majority effectively reweighs the facts for itself in order to conclude that the one-acre requirement is substantially related to the public health, safety, or general welfare. Therefore, I respectfully dissent to the majority's reversal of the trial court's judgment.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED OCTOBER 6, 1997 —
RECONSIDERATION DENIED OCTOBER 31, 1997.

*Jenkins & Nelson, Kirk R. Fjelstul, Judd T. Drake,* for appellant. *Arnold S. Kaye,* for appellees.