A97A2254. WHIPPLE v. CITY OF CORDELE et al.
(499 SE2d 113)

SMITH, Judge.

Barbara Whipple brought suit against the City of Cordele and against the Chairman of the City Commission and three other commissioners in their official and individual capacities, seeking a declaration that a local ordinance prohibiting the stabling of horses within the city limits was invalid and unenforceable. She also sought damages pursuant to 42 USC § 1983 for the violation of her federally secured rights and for the taking of her property without just compensation in violation of her rights under the Fifth and Fourteenth Amendments to the U. S. Constitution and the Georgia Constitution. The trial court granted the defendants' motion for summary judgment, and this appeal ensued. We agree with the trial court that Whipple has no claim against these defendants under § 1983 and that Whipple's other claims for damages must fail because she failed to comply with the ante litem notice requirement in OCGA § 36-33-5. We therefore affirm the judgment below.

The record shows that in 1993, Whipple built at her residence in the city a facility for stabling several horses. Before doing so, she checked with the city attorney, who informed her that no city ordinance prohibited keeping horses within the city limits, and that only the county Health Department would be involved in regulating the activity. In reliance upon this information, Whipple had the barn constructed and expended additional funds on its maintenance and upkeep. She stabled three horses, moving them from other facilities she had been using.

In October 1994, the city adopted an ordinance that prohibited the keeping of horses in residential areas of the city. The ordinance

provides, in pertinent part, as follows: "It shall be unlawful for any person to keep . . . horses . . . temporarily or permanently in the City, except for temporary purposes of licensed sales in non-residential areas, such as but not limited to auction sales. . . . Nothing in this section shall prohibit a show, carnival, fair or circus licensed by the City for one to six days from displaying or using any such animals in entertainment programs." The effective date of the ordinance was April 1, 1995. After that date, the ordinance was enforced against Whipple and she was forced to move her horses. Whipple brought this action in February 1996.

1. It is our duty to inquire on our own motion into the issue of this Court's jurisdiction. *Thibadeau v. Hendon*, 221 Ga. App. 258 (471 SE2d 52) (1996). In this case, our concern is that the complaint appears to challenge the constitutionality of the ordinance in issue. The complaint alleged it sought "declaratory and injunctive relief" and damages to redress the denial of constitutional rights, the taking of her property without just compensation, inverse condemnation, retroactive application of the ordinance in violation of vested rights, and passage of a general law for application to a specific individual. Although the complaint prayed for a declaration that the ordinance was "invalid, illegal and unenforceable," Whipple on appeal appears to concede that the ordinance is valid as a general law; her contention is that it is invalid as applied to her. The trial court did not rule on the constitutional issue, and Whipple does not enumerate as error the trial court's ruling that the ordinance is valid. We therefore conclude that this appeal is not within the exclusive appellate jurisdiction of the Supreme Court, Ga. Const. of 1983, Art. VI, Sec. VI, Par. II, and we address the merits of Whipple's appeal. See *Raskin v. Wallace*, 215 Ga. App. 603, 604 (1) (451 SE2d 485) (1994).

2. As the trial court noted, several valid reasons exist for finding that Whipple's various claims must fail. With the exception of Whipple's claim under 42 USC § 1983, her claims for damages against the city required her to comply with OCGA § 36-33-5 (a) by giving ante litem notice within six months after the effective date of the ordinance.[1] OCGA § 36-33-5 (b). It is undisputed that no such notice was given, and the trial court properly found that her claims against the city, other than her claim under § 1983, were therefore barred.

3. The city and its officials asserted the defenses of sovereign and official immunity. We agree with the trial court that this, too, bars Whipple's recovery on all but her § 1983 claim. See *Davis v. City of Roswell*, 250 Ga. 8, 9 (1) (295 SE2d 317) (1982) (municipality is

---

[1] The provisions of OCGA § 36-33-5 do not apply to actions filed pursuant to 42 USC § 1983. *Armour v. Davidson*, 203 Ga. App. 12 (1) (416 SE2d 92) (1992).

"person" within meaning of § 1983; supremacy clause of Constitution prevents use of state immunity defense to action under § 1983). Whipple argues that the defendants' actions in enacting the ordinance were administrative rather than legislative because the legislation was "aimed at her specifically." But the record includes no evidence of this allegation or any other support for this argument. Moreover, even if the record were to include evidence showing that the motives of the city commission were suspect when they enacted this ordinance, the U. S. Supreme Court has recently held that local legislators are entitled to absolute immunity in performing their legislative functions, regardless of their motives. *Bogan v. Scott-Harris*, ___ U. S. ___ (118 SC 966, ___ LE2d ___) (1998).

4. Whipple contends the trial court erred in determining that her action is not maintainable under 42 USC § 1983. We do not agree. "In order to pursue an action of this nature, a plaintiff must show (1) that he has been deprived of a right secured by the constitution and laws of the United States, and that (2) the defendant acted under color of state law." (Citation and punctuation omitted.) *Patterson v. Butler*, 200 Ga. App. 657, 661 (2) (e) (409 SE2d 531) (1991).

Keeping horses is not a fundamental right, and those who do so do not comprise a suspect class. See *City of Lilburn v. Sanchez*, 268 Ga. 520, 522 (2) (491 SE2d 353) (1997). The ordinance is therefore examined under the rational basis test, and it is a valid exercise of the city's police power if any plausible or arguable reason supports it. Id. Even if questions exist regarding the wisdom of the ordinance, they are not for the courts but for the city's legislative body to decide. Id. Here, as in *Sanchez*, the ordinance obviously serves a legitimate public purpose. See id.; *Thombley v. Hightower*, 52 Ga. App. 716, 720-721 (184 SE 331) (1936); *Thorpe v. Mayor &c. of Savannah*, 13 Ga. App. 767 (79 SE 949) (1913).

Notwithstanding Whipple's unsupported argument to the contrary, retroactive application of such an enactment under a valid exercise of the city's police power would not violate any constitutional prohibition against retroactive statutes unless Whipple had a vested right to keep horses in the city. See *Recycle & Recover v. Ga. Bd. of Nat. Resources*, 266 Ga. 253, 254 (2) (466 SE2d 197) (1996). "In the exercise of the police power, the General Assembly is authorized to place restrictions upon land use in order to protect and preserve the natural resources, environment, and vital areas of this state. . . . An enactment under the police power does not ordinarily violate any constitutional prohibition against retroactive statutes. Nevertheless, our Constitution forbids passage of retroactive laws which injuriously affect the vested rights of citizens. Thus, if [a citizen] has a vested right which would be injuriously affected by application of the amendment . . ., then our Constitution requires that that amend-

ment be applied prospectively rather than retroactively." (Citations and punctuation omitted.) Id.

In *Recycle & Recover*, supra, a divided Supreme Court held that a property owner who becomes "an actual applicant seeking to alter the use of his land" acquires a vested right to have that application considered under the statutory law then in existence, prohibiting the retroactive application of later enacted law. Id. at 254-255 (2). In this case, Whipple did not make formal or official application to modify her property; no formal application was required. She did not acquire a "vested right" to keep horses on her property merely because no law then prohibited her from doing so. The passage of an ordinance that applied in general to all city residents certainly created no such "vested right," nor did her communications with the city attorney, who merely informed her correctly of existing law.

As our Supreme Court recently noted, "[i]n organized society, every person holds all he possesses, and looks forward to all he hopes for, through the aid and under the protection of the laws; but as changes of circumstances and of public opinion, as well as other reasons affecting the public policy, are all the while calling for changes in the laws, and as these changes must influence more or less the value and stability of private possessions, and strengthen or destroy well-founded hopes, and as the power to make very many of them could not be disputed without denying the right of the political community to prosper and advance, it is obvious that many rights, privileges, and exemptions which usually pertain to ownership under a particular state of the law, and many reasonable expectations, cannot be regarded as vested rights in any legal sense." (Citation and punctuation omitted.) *Goldrush II v. City of Marietta*, 267 Ga. 683, 697 (482 SE2d 347) (1997). In *Goldrush II*, the Supreme Court held that the holders of annually renewable liquor licenses had no vested right in the renewal of those licenses that would prevent retrospective application of a city ordinance amending the requirements for such licenses.

We find that Whipple's right to stable horses at her city residence is based upon even less solid ground: the absence of any then existing law preventing it. We conclude, therefore, that the deprivation of Whipple's right to use her property to stable horses was not the deprivation of a vested right. It follows that this deprivation did not entitle her to bring an action under 42 USC § 1983. Finding no other deprivation of any right of Whipple secured by the Constitution and laws of the United States that could give rise to a claim under § 1983, we conclude that the trial court correctly determined that Whipple could not maintain such an action.

5. For similar reasons, Whipple cannot show inverse condemnation. To recover under such a theory, Whipple was required to show

that some element of her "private property" was taken for a public purpose. *State Bd. of Ed. v. Drury*, 263 Ga. 429, 431 (437 SE2d 290) (1993). The "private property" she claimed here was her right and ability to keep horses in the city. But to show a property interest in a benefit, one "must have more than an abstract need or desire for it. He must have more than [a] unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (Citation and punctuation omitted.) Id. Because Whipple had no entitlement to keep horses, her desire to do so was subordinate to the city's concerns for the general health and welfare when the city exercised its police power in a valid manner.

Because Whipple's claims are barred for several reasons, the trial court did not err in granting summary judgment to defendants.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur. McMurray, P. J., disqualified.*

DECIDED MARCH 17, 1998.

*Almand & Wiggins, O. Hale Almand, Jr., Debra Csikos-Van-drasik*, for appellant.

*Roberts, Roberts & Ingram, Guy V. Roberts, Jr.*, for appellees.