S03A0179. GEORGIA DEPARTMENT OF HUMAN RESOURCES
v. SWEAT et al.
(580 SE2d 206)

Sears, Presiding Justice.

The trial court declared Georgia's statutory child support guidelines to be unconstitutional, concluding they violate the constitutional guarantees of due process, equal protection and privacy, and also operate as an unconstitutional taking of property. Having reviewed the matter, we conclude that the trial court erred by employing incorrect constitutional standards and unsound constitutional analyses. Therefore, we reverse.

When they divorced in November 1998, Samuel and Michelle Sweat agreed that Samuel would retain custody of the couple's three minor children, that Michelle would have visitation rights, and that Michelle would not be required to pay child support. In July 2000, at Samuel's request, the Georgia Child Support Enforcement Agency notified Michelle of a "possible modification" of her child support obligation and asked her to furnish financial information. Michelle complied with the request and shortly thereafter, based upon Georgia's statutory child support guidelines (the "Guidelines"),[1] the Agency instructed Michelle to begin paying $452 per month in child support and $79 per month toward her children's health insurance.

Michelle challenged both the child support award and the Guidelines themselves. A hearing was held, after which the trial court declared the Guidelines unconstitutional. The court made many findings of fact concerning the purpose, effect, and uses of the Guidelines and then concluded that because the Guidelines are arbitrary, were hastily enacted, and have been reviewed by an unqualified Guideline Commission, they violate substantive due process under both the Georgia and United States Constitutions. The trial court also held that the Guidelines violate state and federal equal protection guarantees by placing different burdens on individuals who, "but for the award of child custody," are similarly situated. The court then ruled

[1] OCGA § 19-6-15.

that the Guidelines violate the right to privacy because they interfere with "parental decisions regarding financial expenditures on children." Finally, the court held that the Guidelines violate the Georgia Constitution's takings clause by reducing Michelle "to poverty status" such that she could not afford to appeal this action if she was unsuccessful in the trial court. Based on these conclusions and on its own determination of a constitutionally sound standard for the determination of child support, the trial court also denied the Agency's request for modification of the original child support agreement, ruled that Michelle owed no child support, and ordered the state (in the event DHR appealed the trial court's ruling) to provide Michelle with a transcript of the proceedings at no cost to her. For the reasons explained below, we reverse.

1. OCGA § 19-6-15 provides the only means by which a Georgia court may either set or modify an amount of child support to be paid by a non-custodial parent.[2] The child support guidelines contained in OCGA § 19-6-15 provide an outline for the courts to use in setting child support payments in a fair and consistent manner. In brief, the guidelines instruct trial courts to compute a non-custodial parent's gross income and, depending upon the number of children for whom support is required, set an amount of support to be paid within five percent of statutorily prescribed levels.[3] Trial courts may, in their discretion, vary the amount of support to be paid for any of 18 "special circumstances" listed in the statute.[4]

2. The trial court erred in concluding that Georgia's child support guidelines violate both the Georgia and United States Constitutions' guarantees of substantive due process. A statute is presumed to be constitutional unless it is established that it "manifestly infringes upon a constitutional right or violates the rights of the people. . . ."[5] Where, as here, a statute does not infringe upon a fundamental right and the complaining party is not a member of a suspect class, substantive due process analysis of governmental action is performed under the "rational basis test."[6] The rational basis test is the

---

[2] *Ehlers v. Ehlers*, 264 Ga. 668, 669 (449 SE2d 840) (1994).

[3] OCGA § 19-6-15 (b).

[4] OCGA § 19-6-15 (c).

[5] *Love v. State*, 271 Ga. 398, 400 (517 SE2d 53) (1999).

[6] The trial court clearly erred in applying an intermediate scrutiny analysis to appellee's due process and equal protection claims. The trial court's error stems from its finding that the Guidelines are biased against non-custodial fathers and hence discriminate on the basis of gender. By their terms, the Guidelines distinguish only between custodial and non-custodial parents, without regard for their gender. Furthermore, even if there was a colorable claim that the Guidelines affect men disproportionally, mere statistical evidence of differing effects on men and women, with no evidence of invidious discrimination, does not give rise to heightened scrutiny for purposes of constitutional analysis. See *Jefferson v. Hackney*, 406 U. S. 535, 548 (92 SC 1724, 32 LE2d 285) (1972). Furthermore, because appellee is a

least rigorous level of constitutional scrutiny.[7] Under this test, a statute will be upheld in the face of a due process attack so long as it is reasonably related to the public health, safety or general welfare.[8] In the arena of social welfare and economics, a statute is not rendered unconstitutional merely because its classifications are imperfect; "[if] the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"[9] To the contrary, "[o]nly if the means adopted, or the resultant classifications, are irrelevant to the [state's] reasonable objective, or altogether arbitrary, does the [statute] offend due process."[10]

Clearly, the Guidelines are designed to further the important and highly reasonable objective of ensuring that adequate support is provided for Georgia's children whose parents have divorced or separated. Moreover, the Guidelines' means of determining the amount of support to be paid are not arbitrary in any sense of the word. The Guidelines take into account and vary the amount of support to be paid based upon the non-custodial parent's income level as well as 18 enumerated "special circumstances" that may be used to modify the amount of support to be paid.[11] While the Guidelines do classify between custodial and non-custodial parents, that distinction is required in order to ensure that the non-custodial parent contributes his or her fair share to ensure the welfare of the children is protected. Thus, the rational relationship between the Guidelines and their goals is clear, and the Guidelines are not arbitrary in either their means or their distinctions. It follows that the Guidelines comport with the substantive due process requirements of both the Georgia and United States Constitutions, and the trial court erred by concluding otherwise.

3. The trial court erred in concluding that Georgia's child support guidelines violate both the Georgia and United States Constitutions' guarantee of equal protection under the law. The protections provided in the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and in Article I, Section I, Paragraph II of the Georgia Constitution are construed to be consis-

---

woman, she has no standing to claim the Guidelines, as applied, discriminate against men. *Ambles v. State*, 259 Ga. 406 (1) (383 SE2d 555) (1989) (a party has standing to challenge the constitutionality of a statute only if the statute adversely impacts that party's rights).

[7] *Board of Trustees v. Garrett*, 531 U. S. 356, 366-367 (121 SC 955, 148 LE2d 866) (2000); *City of Lilburn v. Sanchez*, 268 Ga. 520, 522 (491 SE2d 353) (1997).

[8] *Sanchez*, 268 Ga. at 522.

[9] *Dandridge v. Williams*, 397 U. S. 481, 485 (96 SC 1153, 25 LE2d 491) (1970) (citation omitted).

[10] *Sanchez*, 268 Ga. at 522.

[11] OCGA § 19-6-15 (b), (c).

tent.[12] Where, as here, no fundamental right or suspect classification is involved, an equal protection challenge to legislative classification is examined under the "rational basis" test.[13] Under the rational basis test, a court will uphold the statute if, under any conceivable set of facts, the classifications drawn in the statute bear a rational relationship to a legitimate end of government not prohibited by the Constitution. "Those challenging the statute bear the responsibility to 'convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' "[14]

It is fundamental that no equal protection violation exists unless legislation treats similarly-situated individuals differently.[15] Contrary to the trial court's conclusion, custodial and non-custodial parents are not, by definition, similarly situated. The custodial parent often contributes to the costs of caring for children, and also takes primary responsibility for the day-to-day care of a child, maintains a separate household suitable for the children, and depends upon the Guidelines to ensure he or she receives adequate financial resources from the non-custodial parent to assist in raising the child. Non-custodial parents generally have measurably less involvement in the day-to-day care of children, and depend on the Guidelines to ensure that their financial support obligations are not out of proportion to their income level. Of course, the financial contributions of non-custodial parents are significant and are often the result of hard work and sacrifice; nonetheless, it is generally true that "after divorce, the custodial parent's responsibility for the child's support as well as care is general and plenary, while the non-custodial parent's responsibility is usually limited to the requirements of the support order."[16] Accordingly, the trial court erred by concluding that custodial and non-custodial parents are similarly situated.

The trial court also erred by implying that the Guidelines affect only obligors of child support payments. The custodial parent is profoundly affected by the amount of support ordered to be paid pursuant to the Guidelines. If the level of financial support is to remain the same, every dollar deducted from a child support obligor's payment

---

[12] *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393, 400 (467 SE2d 875) (1996).

[13] *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (437 SE2d 308) (1993). As discussed in note 6, supra, the trial court erred in finding that the Guidelines are gender biased. That error resulted in the trial court's mistaken application of the "intermediate scrutiny" test to appellee's equal protection claim.

[14] *Cross v. Stokes*, 275 Ga. 872, 877 (572 SE2d 538) (2002), quoting *Craven*, 263 Ga. at 659.

[15] *Village of Willowbrook v. Olech*, 528 U. S. 562, 564 (120 SC 1073, 145 LE2d 1060) (2000).

[16] *Blaisdell v. Blaisdell*, 142 Ill. App. 3d 1034, 1047 (492 NE2d 622) (1986).

results in an increase to the payee parent's child-rearing costs. Thus, application of the Guidelines affects both custodial and non-custodial parents.

The rational basis standard applied to statutes such as this one "reflects the Court's awareness that . . . drawing distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary."[17] As discussed in the preceding Division, there is a clear rational connection between the Guidelines and the legitimate state interest of protecting the well-being of Georgia's children. Insofar as the Guidelines further that goal by drawing permissible distinctions between custodial and non-custodial parents, and without discriminating between similarly-situated individuals, appellee's equal protection analysis is meritless.

4. The trial court erred by concluding that the Guidelines violate the constitutional right to privacy. Appellee has no recognizable privacy interest in the process by which her child support obligations will be determined. Child support levels are not subject to purely private determinations. The level of child support to be paid is always subject to court approval: "The trial court . . . is not bound by an agreement between the parties regarding child support nor is its obligation satisfied by simply adopting that agreement. The trial court is obligated to consider whether such support is sufficient based on the children's needs and the parent's ability to pay."[18] By definition, setting child support payment levels is a public function and process. Furthermore, as discussed above, Georgia's public policy dictates that divorced parents contribute financially to the well-being of their children. Thus, the Guidelines do not infringe upon appellee's privacy interests.

5. The trial court erred in concluding that the Guidelines resulted in an "illegal taking" from appellee in violation of the Georgia Constitution. Simply put, the Guidelines are not a governmental "taking," but rather represent the state's efforts to ensure adequate care for children whose parents have divorced or separated. Furthermore, the Georgia Constitution provides that "private property shall not be taken or damaged *for public purposes* without just and adequate compensation being first paid."[19] The Guidelines do not allow a taking for public purposes, but rather ensure that non-custodial parents help pay the costs of supporting their children. It follows that there is no merit to appellee's claim of an unconstitutional taking of

---

[17] *Massachusetts Bd. of Retirement v. Murgia,* 427 U. S. 307, 314 (96 SC 2562, 49 LE2d 520) (1976).

[18] *Arrington v. Arrington,* 261 Ga. 547 (407 SE2d 758) (1991).

[19] Georgia Const. (1983), Art. I, Sec. III, Par. I (a) (emphasis supplied).

property.

6. The trial court erred by concluding that due to the "confiscatory nature of the Guidelines," appellee would be unable to afford her own transcription costs and therefore the state should be ordered to supply her with a transcript of the trial court proceedings at no cost. Insofar as appellee has never been ordered to pay child support, the trial court's factual predicate for ordering the state to supply a transcript is non-existent. This Court has never held that a non-indigent party should be supplied with a transcript at no cost.[20] "There simply is no authority for the . . . proposition that an indigent has the right to free court reporter services in an appellate, civil proceeding."[21] Accordingly, the trial court erred in ordering that a transcript be provided at no cost to appellee in this case.

*Judgment reversed. Fletcher, C. J., Benham, Carley, Thompson and Hines, JJ., and Judge Alford J. Dempsey, Jr., concur. Hunstein, J., disqualified.*

DECIDED APRIL 29, 2003 —
RECONSIDERATION DENIED JUNE 2, 2003.

*Thurbert E. Baker, Attorney General, Nina J. Edidin, Assistant Attorney General, Charles R. Reddick,* for appellant.

*E. Kontz Bennett, Jr., Daryl G. Lecroy,* for appellees.

Samuel Sweat, *pro se.*

*William C. Akins, Sheila K. Chrzan, Vicky O. Kimbrell, Lisa J. Krisher, Phyllis J. Holmen, Rebecca A. Hoelting, Daniel A. Bloom, David A. Webster, Ashley Carraway,* amici curiae.

---

[20] See OCGA § 5-6-41.

[21] *Quarterman v. Edwards,* 169 Ga. App. 300, 301 (312 SE2d 643) (1983).