S02A0791. STATE OF GEORGIA et al. v. OLD SOUTH AMUSEMENTS, INC. et al.
S02A0792. STATE OF GEORGIA et al. v. PHOENIX AMUSEMENTS, INC.
(564 SE2d 710)

THOMPSON, Justice.

The question for decision in this case is whether Georgia Senate Bill No. SB2EX2, commonly known as the Video Poker Act, is unconstitutional. We hold that it is not, and reverse the trial court's judg-

ment to the contrary.

The Video Poker Act was adopted by the legislature and signed into law on September 15, 2001, to be effective January 1, 2002. The act amends OCGA §§ 16-12-20, 16-12-35, and 48-17-1, by criminalizing the use and possession of video poker amusement machines.

The act came on the heels of similar legislation in South Carolina, and the concomitant influx of video poker machines into this state. It is aimed at stopping the illegal use of the machines for gambling activity in the form of cash payouts.

Heretofore, the machines were lawful as long as they were designed and manufactured for "bona fide amusement purposes" involving "some skill" and "noncash" rewards. OCGA § 16-12-35 (d) (1); see *Webb v. City of Rossville*, 198 Ga. App. 294 (401 SE2d 312) (1991). With the advent of the new act, the machines are unlawful even if they are played purely for amusement purposes.

Plaintiffs are the owners of thousands of video amusement machines. They challenged the constitutionality of the act, asserting that it will render their machines worthless and virtually destroy their businesses. The trial court sided with plaintiffs and struck down the act, finding it to be unconstitutionally vague and over inclusive. This appeal followed.

1. *Vagueness.* The trial court found that the act violates due process because it is so vague and indefinite that men of common intelligence must necessarily guess at its meaning. We disagree.

Section 1 of the act defines a "gambling device" as:

(A) Any contrivance which for a consideration affords the player an opportunity to obtain money or other thing of value, the award of which is determined by chance even though accompanied by some skill, whether or not the prize is automatically paid by contrivance;[1]
(B) Any slot machine or any simulation or variation thereof;
(C) Any matchup or lineup game machine or device, operated for any consideration, in which two or more numerals, symbols, letters, or icons align in a winning combination on one or more lines vertically, horizontally, diagonally, or otherwise, without assistance by the player. Use of the skill stops shall not be considered assistance by the player; or
(D) Any video game machine or device, operated for any consideration, for the play of poker, blackjack, any other card game, or keno or any simulation or variation of any of the foregoing, including, but not limited to, any game in which

---

[1] This subparagraph restates OCGA § 16-12-20 (2) verbatim.

numerals, numbers, or any pictures, representations, or symbols are used as an equivalent or substitute for cards in the conduct of such game.

Any item described in subparagraph (B), (C), or (D) of this paragraph shall be a prohibited gambling device subject to and prohibited by this part, notwithstanding any inference to the contrary in any other law of this state.

The trial court concluded that this definition was vague in several respects. First, it found that the language "any simulation or variation thereof" in subparagraphs (B) and (D), and "any other card game" in subparagraph (D), gives no guidance for determining which types of slot machines or video card machines are unlawful. Second, it determined that the words "any pictures, representations, or symbols" in subsection (D) are too imprecise to allow for certain interpretation and enforcement. We cannot accept these findings.

The legislature is not required to draft its statutes with mathematical precision. *Hargrove v. State*, 253 Ga. 450 (1) (321 SE2d 104) (1984). Although uncertainties may lurk in the words employed by the act, see *Bohannon v. State*, 269 Ga. 130 (3) (497 SE2d 552) (1998), we believe that persons of common intelligence will readily ascertain what the act prohibits. See *Thelen v. State*, 272 Ga. 81, 82 (526 SE2d 60) (2000) (due process requires criminal laws to be sufficiently specific so as to give men of common intelligence fair warning that the conduct they are contemplating is unlawful). After all, the words "slot machine," "simulation," "variation," "pictures," "representations," and "symbols," all possess common meaning.[2] And while the words "any other card game" may encompass numerous kinds of amusement machine games, they, too, give rise to certain significations.[3] Thus, we hold that the act is sufficiently definite to put those of common intelligence on notice as to what kinds of amusement machines are prohibited, and to restrict any excessive discretion that enforcement authorities might otherwise possess. *Thelen v. State*, supra; *Monte Carlo Parties v. Webb*, 253 Ga. 508 (4) (322 SE2d 246) (1984).

---

[2] A "slot machine" is a well recognized device for the hazarding of money. See Black's Law Dictionary (1990), citing *Elder v. Camp*, 193 Ga. 320 (18 SE2d 622) (1942); *Miller v. State*, 87 Ga. App. 408 (74 SE2d 108) (1953), citing *Kolshorn v. State*, 97 Ga. 343 (23 SE 829) (1895). "Simulation" is "the act or process of simulating: imitation, pretense." "Variation" is "the act of varying: the process, state, or fact of being varied: change in the form, position, state or quality of something." "Pictures," "representations," and "symbols" are visual images or forms which by their likeness or reproduction vividly suggest other things. Webster's Third New International Dictionary (1966).

[3] A "card game" is a game which uses playing cards considered in terms of their rank, suit, etc. The New Shorter Oxford English Dictionary (1993).

2. *Overinclusiveness.* The trial court also found that the act violates substantive due process because it is overinclusive.[4] In this regard, the trial court determined that, even though the act has a legitimate goal, i.e., to curtail illegal gambling, that goal can be served narrowly – by criminalizing illegal payouts.[5] It is not necessary, the trial court reasoned, to place an outright ban on amusement machines in order to prohibit cash awards.

We agree with the trial court that the legislature could have taken a less drastic approach to eliminate the evil of video poker gambling. However, that is irrelevant to our inquiry. As it is said:

> When a fundamental right is allegedly infringed by government action, substantive due process requires that the infringement be narrowly tailored to serve a compelling state interest. *State of Ga. v. Jackson*, 269 Ga. 308 (1) (496 SE2d 912) (1998). Where, however, it is not a fundamental right that is infringed and the person complaining is not a member of a suspect class, the government action is examined under the rational basis test, the least rigorous level of constitutional scrutiny. *City of Lilburn v. Sanchez*, 268 Ga. 520 (2) (491 SE2d 353) (1997).

*Old South Duck Tours v. Mayor &c. of Savannah*, 272 Ga. 869, 872 (535 SE2d 751) (2000). Compare *Johnson v. State*, 264 Ga. 590 (1) (449 SE2d 94) (1994) ("[a] statute is unconstitutionally over-broad if it reaches a substantial amount of constitutionally protected conduct").

Plaintiffs are not members of a suspect class, and the possession or use of an amusement machine is not a fundamental right.[6] Accordingly, we apply the substantive due process rational basis test in this case. *Farley v. State*, 272 Ga. 432 (531 SE2d 100) (2000); *City of Lilburn v. Sanchez*, supra at 522 (2).

---

[4] Although the trial court spoke in terms of "equal protection," it properly employed a substantive due process analysis. See *Kelley v. Dept. of Human Resources*, 269 Ga. 384, 386 (3) (498 SE2d 741) (1998) (equal protection clause prohibits the State from treating similarly situated persons differently via the creation of disparate categories); *Lowe v. State of Ga.*, 267 Ga. 754 (1) (482 SE2d 344) (1997) (no need to conduct equal protection analysis unless plaintiff can show that he is similarly situated to members of a class who are treated differently from him).

[5] In fact, subsections (e), (f), and (g) of OCGA § 16-12-35, which criminalize the giving of money in exchange for free replays, noncash awards, or the successful play of amusement machines, are all designed to curb illegal video game payouts. The problem is that, as an August 2001 GBI impact study points out, the cost of policing amusement machines to ensure that they are not used illegally is prohibitive.

[6] We categorically reject the assertion that the act impinges on the plaintiffs' right to privacy. After all, the plaintiffs own and possess the amusement machines to lease them for commercial purposes.

Under that test, a municipal ordinance is a valid exercise of the police power if it is substantially related to the public health, safety, or general welfare. [Cit.] In this regard, any plausible or arguable reason that supports an ordinance will satisfy substantive due process. [Cit.] So long as an ordinance realistically serves a legitimate public purpose, and it employs means that are reasonably necessary to achieve that purpose, without unduly oppressing the individuals regulated, the ordinance must survive a due process challenge. [Cit.] The rational basis standard is the least rigorous test of constitutional scrutiny. It does not require that an ordinance adopt the best, or even the least intrusive, means available to achieve its objective. To the contrary, the means adopted by an ordinance need only be reasonable in relation to the goal they seek to achieve. [Cit.] Only if the means adopted, or the resultant classifications, are irrelevant to the City's reasonable objective, or altogether arbitrary, does the ordinance offend due process. [Cit.] Otherwise, it is established that "the courts have no right to interfere with the exercise of legislative discretion." [Cit.] Furthermore, where "legislative action is within the scope of the police power . . . fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of the courts, but for that of the legislative body on which rests the duty and responsibility of (the) decision." [Cit.]

(Emphasis omitted.) *City of Lilburn v. Sanchez*, supra at 522.

Applying the rational basis test to the Video Poker Act, we conclude that the act bears a rational relation to the State's objective – insuring that amusement machines are not used for illegal cash payouts.

The fact that the distinctions drawn in [the act] may be imperfectly related to the goals desired does not make the [act] invalid. If the classification is overinclusive or underinclusive, it is nevertheless a good enough fit. Cf., *Hughes v. Alexandria Scrap Corp.*, 426 U. S. 794, 813 [(96 SC 2488, 49 LE2d 220)] (1976). We cannot require the legislature to establish a perfect classification system. [Cit.]

*St. John's Melkite Catholic Church v. Commr. of Revenue*, 240 Ga. 733, 740 (242 SE2d 108) (1978). The act does not violate substantive due process.

3. *Takings clause.* That the legislature enacted the Video Poker Act in the valid exercise of its police power does not end our inquiry,

however, because plaintiffs assert the act violates the takings clause of our Constitution.[7] In support of their assertion, plaintiffs rely upon *Lamar Advertising of South Georgia v. City of Albany*, 260 Ga. 46 (389 SE2d 216) (1990).

In *Lamar*, this Court declared a sign ordinance unconstitutional because it banned non-conforming signs without compensating the owners. In so doing, Justice Weltner, writing for the majority, declared:

> Because the enforcement of the removal provision of the ordinance will result in the destruction of a substantial part of a lawful enterprise, it effects a taking of private property without just and adequate compensation. Hence, it is void under our Constitution.

Id. at 47.

*Lamar* does not fit the facts of this case because, unlike signs, amusement machines have been permitted to operate in this state only by the grace of the legislature. In fact, amusement machines have been the subject of frequent and intensive regulation in this state.[8] Thus, cases involving regulated industries are more on point.

In *Menken v. City of Atlanta*, 78 Ga. 668 (2 SE 559) (1887), the City of Atlanta enacted a municipal ordinance prohibiting the keeping of liquor. The ordinance was challenged by the agent of a brewery on the ground that it violated the takings clause. This Court recognized that the brewery's investment was made at a time when it was lawful to keep liquor in the city and that, if the ordinance were upheld, the brewery's buildings, inventory and machinery would lose 80 percent of their value. Nevertheless, noting that liquors have always been the subject of regulation and control, the Court ruled that there had been no taking within the meaning of the State Constitution:

> There has been no physical interference with the brewery, no trespass or tort upon it, no change in its physical sur-

---

[7] Although plaintiffs raised this ground below, the trial court did not find it necessary to address it since the act was declared unconstitutional on due process and equal protection grounds.

[8] In 1978, the legislature exempted coin-operated amusement machines which awarded a player with up to 15 free replays from the definition of a gambling device. Ga. L. 1978, p. 1779. Thirteen years later, the machines were permitted to reward a player with noncash prizes, toys and novelties, having a wholesale value of less than $5. Ga. L. 1991, p. 1398. In 1996, the cap on free replays was removed and players were permitted to win noncash "merchandise" and "gift certificates" not exceeding a wholesale value of $5. Ga. L. 1996, p. 309. In 1999, the reward system was expanded to authorize combinations of free replays, merchandise, toys, gift certificates, novelties, points, vouchers and tickets. Ga. L. 1999, p. 1224.

roundings, or in the means of ingress and egress. It is as sound and complete in every respect, and as fit for enjoyment, use and disposition, with this law in force, as it would be without it. No doubt its value is greatly impaired, and impairment of value is often the essence of legal damage. No doubt, too, that the impaired value of this property is a remote consequence of the law, and that were the law repealed the value would be reinstated as it was before. But while to lessen the value of property by changing its physical condition, or by subjecting it directly to new physical conditions of a hurtful character is to damage it, to reduce its value indirectly and incidentally by the casual effects of a law passed for a wholly different object, is not to damage it, within any legal or constitutional sense of the term. Rarely, perhaps, does any new law which acts with vigor upon commerce, local or general, fail to impair the value of more or less property. Surely the damage clause in our new constitution was not intended to make the State or the legislature an insurer against all shrinkage of values that might result from the passage of laws intended for the public good. Can it be seriously thought that the State must literally pay its way to the establishment of a sound and wholesome system of internal police and public order?

The local option law rests in no degree upon the power of eminent domain. It does not contemplate either the taking or the damaging of anything. It is an exercise of the police power of this commonwealth, pure and simple. The incidental effects upon the value of this brewery and its fixtures result not from any interference with the property, but solely from the inability of the owners to adjust their old business to the new law. These effects, if they can be called damage at all, are *damnum absque injuria*. The law does not take or damage the property of these owners for the public use, but only prevents them, to a certain limited extent, from taking or damaging the public for their use. This is their real grievance, and for that they have no remedy. Where business and law conflict, it is the business that must give way, not the law.

Id. at 677-678. See also *Woodward v. City of Lithonia*, 191 Ga. 234 (11 SE2d 476) (1940) (an ordinance prohibiting the maintenance and operation of pinball machines does not impair the obligation of contracts or amount to a confiscation of property).

In this case, as in *Menken*, the new law does not take business property for a public use; it merely requires an already regulated

business to adjust its property to the new law.[9]
*Judgments reversed. All the Justices concur.*

DECIDED MAY 28, 2002 —
RECONSIDERATION DENIED JUNE 20, 2002.

*Thurbert E. Baker, Attorney General, Christopher S. Brasher, Assistant Attorney General, Bondurant, Mixson & Elmore, Emmet J. Bondurant, Michael B. Terry, Frank M. Lowrey IV,* for appellants.

*Manchel, Wiggins & Kaye, Howard J. Manchel, Jerome J. Froelich, Jr., Alan I. Begner, David J. Bederman, Spix, Krupp & Reece, Mark V. Spix,* for appellees.

---

[9] Our holding in this regard is buttressed by the fact that the Video Poker Act contains an amortization period which will enable the plaintiffs to sell their machines in other states until June 30, 2002. See *Hamilton v. Kentucky Distilleries & Warehouse Co.,* 251 U. S. 146, 157 (40 SC 106, 64 LE 194) (1919) (liquor not taken for public purposes where statute authorized seven months amortization period).