ELLINGTON, Judge.
 

 In Case No. A07A1015, the State of Georgia appeals from the final order and judgment of the Superior Court of Cobb County in this suit brought by the District Attorney to condemn 11 game machines. In its detailed order, the superior court denied the State's petition to condemn seven of the game machines
 
 [1]
 
 but granted the petition as to the remaining four machines.
 
 [2]
 
 The State appeals, contending the superior court erred in refusing to condemn the seven machines seized by the State pursuant to OCGA §§ 16-12-20, 16-12-30, 16-12-32, and 16-12-35. In Case Nos. A07A1016, A07A1017, and A07A1018, the owners of the four condemned game machines cross-appeal, contending their machines did not violate the law. We consolidate these cases for purposes of this opinion, and, as more fully explained below, affirm in part and reverse in part.
 

 The relevant procedural facts are as follows. The State of Georgia, by and through the District Attorney of Cobb County, filed 12 complaints for condemnation in the Cobb County Superior Court. In each complaint, the State sought to condemn one or more game machines and the U.S. currency used or intended to be used in the seized machines. Upon the joint motion of the parties, the superior court consolidated the cases. By agreement of the parties, the State amended one of its complaints to add additional machines to the consolidated condemnation case. To simplify the action, the parties divided the machines into classes and agreed to allow one machine from each class to serve as a representative of that class at trial. The superior court conducted a bench trial and the parties presented lay and expert witness testimony about how the machines were manufactured and programmed, how they were played, and how they dispensed rewards. Following the trial, the court asked the parties to present proposed findings of fact and conclusions of law. After considering the parties' proposals, the court issued a 76-page final order detailing the evidence adduced with respect to each machine, the position of the parties with respect to each machine, the court's analysis of the applicable law, and the court's findings of facts and conclusions of law with respect to each machine. The court concluded that four of the eleven machines were gambling devices subject to condemnation pursuant to OCGA §§ 16-12-20 and 16-12-35, but that seven of the machines were not. It is from this order that the State appeals and the respondents cross-appeal.
 

 Case No. A07A1015
 

 1. The State contends the trial court erred in construing OCGA § 16-12-35(d), which governs the rewards an otherwise legal game machine may give; in defining "any slot machine or any simulation or variation thereof," pursuant to OCGA § 16-12-20(2)(B); and in holding that seven of the
 
 *399
 
 eleven machines were not gambling devices subject to condemnation pursuant to these Code sections. For the reasons that follow, we agree that the trial court erred in concluding that these seven machines were not subject to condemnation.
 

 (a) Generally, possessing a gambling device is illegal, and the gambling devices are subject to seizure and condemnation. OCGA §§ 16-12-24(a) (possession of gambling devices); 16-12-30(a) (seizure and destruction of gambling devices). A gambling device is generally defined as:
 

 Any contrivance which for a consideration affords the player an opportunity to obtain money or other thing of value, the award of which is determined by chance even though accompanied by some skill, whether or not the prize is automatically paid by contrivance.
 

 OCGA § 16-12-20(2)(A). A gambling device is also defined to include slot machines, matchup or lineup games, and video poker, card and keno games. OCGA § 16-12-20(1)(2)(B), (C), and (D). The gambling laws do not apply, however, to those devices which may be classified as those designed and manufactured for "bona fide amusement purposes only." OCGA § 16-12-35(b). The Code provides that:
 

 Nothing in this part shall apply to a coin operated game or device designed and manufactured for bona fide amusement purposes only which may by application of some skill entitle the player to earn replays of the game or device at no additional cost and to discharge the accumulated free replays only by reactivating the game or device for each accumulated free replay or by reactivating the game or device for a portion or all of the accumulated free plays in a single play.
 

 OCGA § 16-12-35(b). Such bona fide amusement devices may also dispense limited rewards for successful play. The Code provides, in relevant part, that:
 

 (1) Nothing in this part shall apply to a coin operated game or device designed and manufactured only for bona fide amusement purposes which involves some skill in its operation if it rewards the player exclusively with:
 

 (A) Free replays;
 

 (B) Merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for a single play of the game or device;
 

 (C) Points, tokens, vouchers, tickets, or other evidence of winnings which may be exchanged for rewards set out in subparagraph (A) of this paragraph or subparagraph (B) of this paragraph or a combination of rewards set out in subparagraph (A) and subparagraph (B) of this paragraph; or
 

 (D) Any combination of rewards set out in two or more of subparagraph (A), (B), or (C) of this paragraph.
 

 ....
 

 (2) A player of bona fide coin operated amusement games or devices described in paragraph (1) of this subsection may accumulate winnings for the successful play of such bona fide coin operated amusement games or devices through tokens, vouchers, points, or tickets. Points may be accrued on the machine or device. A player may carry over points on one play to subsequent plays. A player may redeem accumulated tokens, vouchers, or tickets for noncash merchandise, prizes, toys, gift certificates, or novelties so long as the amount of tokens, vouchers, or tickets received does not exceed $5.00 for a single play.
 

 OCGA § 16-12-35(d).
 

 (b) In its first enumeration of error, the State contends the trial court erred in construing OCGA § 16-12-35(d), which governs the rewards an otherwise legal gaming machine may give. In reaching its decision that the seven gaming machines at issue were not subject to condemnation, the superior court construed the rewards provision as follows:
 

 A player could also play a Machine, win points, redeem said points earned in that game, and then play again, win points, redeem said points, and continue to earn points and redeem points for each single play of the Machine. For a player to play a Machine in such a fashion is no different than playing a Machine for several plays, allowing the points to accumulate as permitted
 
 *400
 
 in [OCGA § 16-12-35](d)(2), and then redeeming the points in the form of token or tickets for non-cash merchandise not to exceed $5.00 for a single play.
 

 The court concluded the seven game machines at issue complied with the statute because the evidence showed that each of the machines "had a mechanism that determined the number of plays and provided the player with a certificate or voucher for noncash merchandise for $5.00 per play regardless of the number of points the player accumulated." Thus, the court concluded, under the statute, that "accumulated points may be redeemed for tokens, vouchers, or tickets which then may be exchanged for non-cash merchandise." Based on the court's analysis, a game machine could potentially reward a player for successive plays on the same machine with a series of $5 tokens, vouchers, or tickets, and those rewards may accumulate in amounts far exceeding the $5 limitation in OCGA § 16-12-35(d)(1)(B). And on this basis, the court held that the seven machines at issue "per se" complied with the rewards provision of the law. We find this analysis flawed because the superior court has misconstrued the term "a single play of the game or device" in OCGA § 16-12-35(d)(1)(B).
 

 Code Section 16-12-35(d) expressly provides that a bona fide amusement game or device may reward a player with points, tokens, vouchers, tickets or other evidence of winnings. OCGA § 16-12-35(d)(1)(C). Such evidence of winnings may
 
 accumulate
 
 for successful play, and points may
 
 carry over
 
 from play to subsequent play. OCGA § 16-12-35(d)(2). However, those accumulated points (or tokens or vouchers or other evidence of winnings) may be
 
 exchanged
 
 only for free replays, OCGA § 16-12-35(d)(1)(A), (C), or for "noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for
 
 a single play of the game or device,
 
 " (emphasis supplied) OCGA § 16-12-35(d)(1)(B), (C), or a combination of the those things, OCGA § 16-12-35(d)(1)(C), (D).
 

 The term "a single play of the game or device" is key to our analysis. Unfortunately, it is not defined in the statute. See OCGA § 16-12-20. However, we conclude that the term is one of common parlance having no separate legal significance. "[A] single play of the game or device" has occurred when a player cannot continue playing the game machine or device without providing additional consideration.
 
 [3]
 
 Such a definition is implicit, for example, in OCGA § 16-12-35(b), which provides that a bona fide amusement machine allows a player to earn replays only at "no additional cost." We further note that "game" and "device" as used in subsection (d)(1) are synonyms for the bona fide amusement
 
 machine
 
 - the concrete device upon which or through which a game or games are played. "Game," as used in this context, is not the equivalent of a play or a replay of the abstract amusements offered through or supported by the physical machine. See OCGA § 16-12-35(d)(1) ("a coin operated game or device designed and manufactured only for bona fide amusement purposes"). See also OCGA §§ 16-12-35(b) ("a coin operated game or device designed and manufactured for bona fide amusement purposes only"); 16-12-36(c)(1) ("a crane game machine or device"). Thus, when the physical machine suspends play until the player uses accumulated winnings to continue play upon on it, "a single play of the game or device" has occurred. At this point, the player may take his winnings in the form of noncash merchandise not to exceed $5 in value, or, if there is to be any continued play, the machine must "discharge the accumulated free replays
 
 only
 
 by reactivating the game or device for each accumulated free replay or by reactivating the game or device for a portion or all of the accumulated free plays in a single play." (Emphasis supplied.) OCGA § 16-12-35(b). In short, if the player does not "cash out" at this point for a prize,
 
 *401
 
 he or she may only use the accumulated winning to start the game anew.
 

 Further, we hold that OCGA § 16-12-35(d)(2) does not allow for the accumulation of tokens, vouchers, or tickets in amounts exceeding $5 for a single play of the game or device. We must read subsection (d)(2) in harmony with subsection (d)(1), which it references. Therefore, we construe the phrase "single play" at the end of subsection (d)(2) to mean a "single play of the game or device," as defined above. To hold otherwise would render the $5 limitation in OCGA § 16-12-35(d)(1)(B) meaningless and undermine the intent of the statute. See
 
 Brown v. Liberty County,
 

 271 Ga. 634
 
 , 635,
 
 522 S.E.2d 466
 
 (1999) (the courts must strive to make all parts of a statute harmonize and to give a sensible and intelligent effect to each part). The clear intent of OCGA § 16-12-35(d) is to limit the rewards available for a single play of a bona fide amusement machine to things of minimal value in order to discourage the evils associated with gambling.
 
 [4]
 

 We have reviewed
 
 [5]
 
 the evidence adduced with respect to the seven machines at issue, and the record reveals that the State carried its burden of showing by a preponderance of the evidence that each of the seven machines was capable of rewarding a player with cash or noncash merchandise in excess of $5 for a single play of the game or device. Therefore, the machines violate the rewards provisions of OCGA § 16-12-35(d), do not qualify as machines for bona fide amusement purposes only, and are subject to condemnation. Consequently we must reverse the trial court's order with respect to these seven machines.
 

 (c) The State also contends the superior court erred in construing "[a]ny slot machine or any simulation or variation thereof," pursuant to OCGA § 16-12-20(2)(B), and in concluding that five of the seven machines at issue were not subject to condemnation under this Code section. However, given our ruling in Division 1(a), we decline to address this issue and consider it moot.
 

 Case Nos. A07A1016, A07A1017, A07A1018
 

 2. In all three cross-appeals, the appellees present identical issues. Specifically, they argue that the superior court erred in finding that the four condemned machines were gambling devices. The cross-appellants contend the four machines were designed and manufactured for bona fide amusement purposes only and do not violate the rewards provisions of OCGA § 16-12-35(d). However, the evidence adduced with respect to the four machines reveals that the State carried its burden of showing by a preponderance of the evidence that each of the four machines was capable of rewarding a player with cash or noncash merchandise in excess of $5 for a single play of the game or device. Therefore, the superior court properly held that the machines were subject to condemnation. See Division 1,
 
 supra.
 
 The superior court's final order and judgment with respect to these four machines is, therefore, affirmed.
 

 3. Nizar Damani's motion to supplement the record is denied as moot.
 

 Judgment affirmed in part and reversed in part.
 

 ANDREWS, P.J., and ADAMS, J., concur.
 

 The superior court held that these machines were not subject to condemnation: State's Exhibit Nos. 1 (Speedmaster), 6 (Nudge `Em), 8 (Superball), 11 (Silver Bar), 12a/12b/12c (Nudge `Em, Farm `Em, and Nuggets of Gold), 13 (Peachy Queen), and 14 (Pick-a-Winner).
 

 The superior court held that these machines were subject to condemnation: State's Exhibit Nos. 5 (Pirate's Treasure), 7 (Jungle King), 9 (Knight's Challenge), and 10 (Bonus Skill Drop).
 

 "Consideration" means more than inserting more money into a machine. When a player must use accumulated winnings, regardless of their form (e.g., points, tickets, credits), to continue playing the machine, a single play of the game or device has ended and new play has begun. At this point, the machine must discharge the player's replays as provided in OCGA § 16-12-35(b).
 

 On September 15, 2001, the legislature adopted and signed into law the so-called "Video Poker Act," Senate Bill 2EX2, and it became effective January 1, 2002.
 
 State of Ga. v. Old South Amusements,
 

 275 Ga. 274
 
 , 275,
 
 564 S.E.2d 710
 
 (2002). The act amended OCGA §§ 16-12-20, 16-12-35, and 48-17-1, by criminalizing the use and possession of video poker amusement machines and by limiting the types and amounts of prizes available on bona fide amusement games.
 
 Id.
 
 "The [A]ct came on the heels of similar legislation in South Carolina, and the concomitant influx of video poker machines into [Georgia]. It [was] aimed at stopping the illegal use of the machines for gambling activity in the form of cash payouts."
 
 Id.
 
 Governor Roy Barnes described the proliferation of gambling devices in Georgia as a "cancer" spreading throughout the state. Cheralynn M. Gregoire, Note, Peach Sheets, Crimes and Offenses,
 
 19 Ga. St. U.L.Rev. 105
 
 , 109 (2002).
 

 "[I]n all nonjury trials in courts of record ... [the court's f]indings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." OCGA § 9-11-52(a).