A07A1015. STATE OF GEORGIA v. DAMANI et al.
A07A1016. ULTRA TELECOM, INC. v. STATE OF GEORGIA.
A07A1017. ALLSTAR, INC. et al. v. STATE OF GEORGIA.
A07A1018. JACKSON v. STATE OF GEORGIA.
(681 SE2d 635)

ELLINGTON, Judge.

The Supreme Court of Georgia vacated our original decision[1] in this case so that the appellees in Case No. A07A1015, and the cross-appellants in Case Nos. A07A1016, A07A1017, and A07A1018 could supplement the record with "exhibits necessary to assessing the true and complete facts as they occurred in the trial court." *Damani v. State of Ga.*, 284 Ga. 372, 373 (667 SE2d 372) (2008). Upon remand, we ordered the parties to supplement the appellate record and to submit supplemental briefs addressing that record evidence, and we granted the parties' request for oral argument. Having fully considered this additional evidence and argument, we reissue our opinion as follows.

In Case No. A07A1015, the State of Georgia appeals from the final order and judgment of the Superior Court of Cobb County in this suit brought by the District Attorney to condemn illegal game machines pursuant to OCGA §§ 16-12-20, 16-12-30, 16-12-32, and 16-12-35. In its detailed order, the superior court denied the State's

---

[1] *State of Ga. v. Damani*, 288 Ga. App. 588 (654 SE2d 396) (2007).

petition to condemn seven of the game machines[2] but granted the petition as to the remaining four machines.[3] The State appeals, contending the superior court erred in refusing to condemn all of the machines seized by the State. In Case Nos. A07A1016, A07A1017, and A07A1018, the owners of the four condemned game machines cross-appeal, contending their machines did not violate the law. We consolidate these appeals for purposes of this opinion. As more fully explained below, we conclude that all 11 of the game machines are illegal game machines and are subject to condemnation. Therefore, we affirm the trial court's judgment in part and reverse in part.

The relevant procedural facts are as follows. The State of Georgia, by and through the District Attorney of Cobb County, filed 12 complaints for condemnation in the Superior Court of Cobb County. In each complaint, the State sought to condemn one or more game machines and the United States currency used or intended to be used in the seized machines. Upon the joint motion of the parties, the superior court consolidated the cases. By agreement of the parties, the State amended one of its complaints to add additional machines to the consolidated condemnation case. To simplify the action, the parties divided the machines into eleven classes and agreed to allow one machine from each class to serve as a representative of that class at trial. The court conducted a bench trial and the parties presented lay and expert witness testimony about how the machines were manufactured and programmed, how they were played, and how they dispensed rewards. Following the trial, the court asked the parties to present proposed findings of fact and conclusions of law. After considering the parties' proposals, the court issued a 76-page final order detailing the evidence adduced with respect to each of the 11 machines, the position of the parties with respect to each machine, the court's analysis of the applicable law, and the court's findings of facts and conclusions of law with respect to each machine. The court concluded that four of the eleven machines were gambling devices subject to condemnation pursuant to OCGA §§ 16-12-20 and 16-12-35, but that seven of the machines were not. It is from this order that the State appeals and the owners cross-appeal.

---

[2] The superior court held that these machines were not subject to condemnation: State's Exhibit Nos. 1 (Speedmaster), 6 (Nudge 'Em), 8 (Superball), 11 (Silver Bar), 12a/12b/12c (Nudge 'Em, Farm 'Em, and Nuggets of Gold), 13 (Peachy Queen), and 14 (Pick-a-Winner).

[3] The superior court held that these machines were subject to condemnation: State's Exhibit Nos. 5 (Pirate's Treasure), 7 (Jungle King), 9 (Knight's Challenge), and 10 (Bonus Skill Drop).

*Case No. A07A1015*

1. The State contends the trial court erred in construing OCGA § 16-12-35 (d), which governs the rewards an otherwise legal game machine may give; in defining "[a]ny slot machine or any simulation or variation thereof," pursuant to OCGA § 16-12-20 (2) (B); and in holding that seven of the eleven machines were not gambling devices subject to condemnation pursuant to these Code sections. For the reasons that follow, we agree that the trial court erred in concluding that these seven machines were not subject to condemnation.

(a) Generally, possessing a gambling device in Georgia is illegal, and the gambling devices are subject to seizure and condemnation. OCGA §§ 16-12-24 (a) (possession of gambling devices); 16-12-30 (a) (seizure and destruction of gambling devices). A gambling device is generally defined as:

> Any contrivance which for a consideration affords the player an opportunity to obtain money or other thing of value, the award of which is determined by chance even though accompanied by some skill, whether or not the prize is automatically paid by contrivance.

OCGA § 16-12-20 (2) (A). A gambling device is also defined to include slot machines, matchup or lineup games, and video poker, card and keno games. OCGA § 16-12-20 (1), (2) (B), (C), and (D). The gambling laws do not apply, however, to those devices which may be classified as those designed and manufactured for "bona fide amusement purposes only." OCGA § 16-12-35 (b). The Code provides:

> Nothing in this part shall apply to a coin operated game or device designed and manufactured for bona fide amusement purposes only which may by application of some skill entitle the player to earn replays of the game or device at no additional cost and to discharge the accumulated free replays only by reactivating the game or device for each accumulated free replay or by reactivating the game or device for a portion or all of the accumulated free plays in a single play.

OCGA § 16-12-35 (b). Such bona fide amusement devices may also dispense limited rewards for successful play. OCGA § 16-12-35 (d) provides, in relevant part:

> (1) Nothing in this part shall apply to a coin operated

game or device designed and manufactured only for bona fide amusement purposes which involves some skill in its operation if it rewards the player exclusively with:

(A) Free replays;

(B) Merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for a single play of the game or device;

(C) Points, tokens, vouchers, tickets, or other evidence of winnings which may be exchanged for rewards set out in subparagraph (A) of this paragraph or subparagraph (B) of this paragraph or a combination of rewards set out in subparagraph (A) and subparagraph (B) of this paragraph; or

(D) Any combination of rewards set out in two or more of subparagraph (A), (B), or (C) of this paragraph.

. . . .

(2) A player of bona fide coin operated amusement games or devices described in paragraph (1) of this subsection may accumulate winnings for the successful play of such bona fide coin operated amusement games or devices through tokens, vouchers, points, or tickets. Points may be accrued on the machine or device. A player may carry over points on one play to subsequent plays. A player may redeem accumulated tokens, vouchers, or tickets for non-cash merchandise, prizes, toys, gift certificates, or novelties so long as the amount of tokens, vouchers, or tickets received does not exceed $5.00 for a single play.

(b) The State contends the trial court erred in construing OCGA § 16-12-35 (d), which governs the rewards an otherwise legal game machine may give. In reaching its decision that the seven game machines at issue were not subject to condemnation, the superior court construed the rewards provision as follows:

A player could also play a Machine, win points, redeem said points earned in that game, and then play again, win points, redeem said points, and continue to earn points and redeem points for each single play of the Machine. For a player to play a Machine in such a fashion is no different than playing a Machine for several plays, allowing the points to accumulate as permitted in [OCGA § 16-12-35] (d) (2), and then redeeming the points in the form of token or tickets for non-cash merchandise not to exceed $5.00 for a single play.

The court concluded the seven game machines at issue complied with the statute because the evidence showed that each of the machines "had a mechanism that determined the number of plays and provided the player with a certificate or voucher for noncash merchandise for $5.00 per play regardless of the number of points the player accumulated." Thus, the court concluded that, under the statute, "accumulated points may be redeemed for tokens, vouchers, or tickets which then may be exchanged for non-cash merchandise." Based on the court's analysis, a game machine could potentially reward a player for successive plays on the same machine with a series of $5 tokens, vouchers, or tickets, and those rewards may accumulate in amounts far exceeding the $5 limitation in OCGA § 16-12-35 (d) (1) (B). And on this basis, the court held that the seven machines at issue "per se" complied with the rewards provision of the law. We find this analysis flawed because the superior court has misconstrued the term "a single play of the game or device" in OCGA § 16-12-35 (d) (1) (B).

OCGA § 16-12-35 (d) expressly provides that a bona fide amusement game or device may reward a player with points, tokens, vouchers, tickets or other evidence of winnings. OCGA § 16-12-35 (d) (1) (C). Such evidence of winnings may *accumulate* for successful play, and points may *carry over* from play to subsequent play. OCGA § 16-12-35 (d) (2). However, those accumulated points (or tokens or vouchers or other evidence of winnings) may be *exchanged* only for free replays, OCGA § 16-12-35 (d) (1) (A), (C), or for "noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for *a single play of the game or device*," (emphasis supplied) OCGA § 16-12-35 (d) (1) (B), (C), or a combination of the those things, OCGA § 16-12-35 (d) (1) (C), (D).

The term "a single play of the game or device" is key to our analysis. Unfortunately, it is not defined in the statute. See OCGA § 16-12-20. However, we conclude that the term is one of common parlance having no separate legal significance. "[A] single play of the game or device" has occurred when a player cannot continue playing the game machine or device without providing additional consideration.[4] Such a definition is implicit, for example, in OCGA § 16-12-35 (b), which provides that a bona fide amusement machine allows a player to earn replays only at "no additional cost."

---

[4] "Consideration" means more than inserting money into a machine. When a player must use accumulated winnings, regardless of their form (e.g., points, tickets, credits), to continue playing the machine, a single play of the game or device has ended and new play has begun. At this point, the machine must discharge the player's replays as provided in OCGA § 16-12-35 (b).

We further note that "game" and "device" as used in subsection (d) (1) are synonyms for the bona fide amusement *machine* — the tangible equipment upon which or through which a game or games are played. "Game," as used in this context, is not the equivalent of a play or a replay of the abstract amusements offered through or supported by the tangible machine. See OCGA § 16-12-35 (d) (1) ("a coin operated game or device designed and manufactured only for bona fide amusement purposes"); see also OCGA § 16-12-35 (b) ("a coin operated game or device designed and manufactured for bona fide amusement purposes only"); OCGA § 16-12-35 (c) (1) ("a crane game machine or device"). Thus, when the tangible machine suspends play until the player uses accumulated winnings to continue play upon it, "a single play of the game or device" has occurred. At this point, the player may take his winnings in the form of noncash merchandise not to exceed $5 in value, or, if there is to be any continued play, the machine must "discharge the accumulated free replays *only* by reactivating the game or device for each accumulated free replay or by reactivating the game or device for a portion or all of the accumulated free plays in a single play." (Emphasis supplied.) OCGA § 16-12-35 (b). In short, if the player does not "cash out" at this point for a prize not to exceed $5 in value, he or she may only use accumulated winnings to start the game anew.

Further, we hold that OCGA § 16-12-35 (d) (2) does not allow for the accumulation of tokens, vouchers, or tickets in amounts exceeding $5 for a single play of the game or device. We must read subsection (d) (2) in harmony with subsection (d) (1), which it references. Therefore, we construe the phrase "single play" at the end of subsection (d) (2) to mean a "single play of the game or device," as defined above. To hold otherwise would render the $5 limitation in OCGA § 16-12-35 (d) (1) (B) meaningless and undermine the intent of the statute. See *Brown v. Liberty County*, 271 Ga. 634, 635 (522 SE2d 466) (1999) (the courts must strive to make all parts of a statute harmonize and to give a sensible and intelligent effect to each part). The clear intent of OCGA § 16-12-35 (d) is to limit the rewards available for a single play of a bona fide amusement machine to things of minimal value in order to discourage the evils generally associated with gambling.[5] The legislature has spoken, and

---

[5] On September 15, 2001, the legislature adopted and signed into law the so-called "Video Poker Act," Senate Bill 2EX2, and it became effective January 1, 2002. *State of Ga. v. Old South Amusements*, 275 Ga. 274, 275 (564 SE2d 710) (2002). The act amended OCGA §§ 16-12-20, 16-12-35, and 48-17-1, by criminalizing the use and possession of video poker amusement machines and by limiting the types and amounts of prizes available on bona fide amusement games. Id. "The [A]ct came on the heels of similar legislation in South Carolina, and the concomitant influx of video poker machines into [Georgia]. It [was] aimed at stopping the illegal use of the machines for gambling activity in the form of cash payouts." Id. Governor

we must assume that it means what it said.

We have reviewed[6] the evidence adduced with respect to the seven machines at issue, including the supplemented record, and the record reveals that the State carried its burden of showing by a preponderance of the evidence that each of the seven machines was capable of rewarding a player with cash or noncash merchandise in excess of $5 for a single play of the game or device. The supplemental evidence presented by the owners of the game machines does not change our analysis. The owners' expert opinion that the machines at issue comply with the redemption law is premised upon an erroneous assumption that the law allows the machines to offer payouts exceeding $5 for a single play of the game or device. As discussed above, the redemption provisions cannot be so construed. For these reasons, we conclude that the trial court erred in finding that these machines do not violate the rewards provisions of OCGA § 16-12-35 (d), qualify as machines for bona fide amusement purposes only, and are not subject to condemnation. Consequently, we must reverse the trial court's order with respect to these seven machines.

(c) The State also contends the superior court erred in construing "[a]ny slot machine or any simulation or variation thereof," pursuant to OCGA § 16-12-20 (2) (B), and in concluding that five of the seven machines at issue were not subject to condemnation under this Code section. However, given our ruling in Division 1 (a), we decline to address this issue because it is moot.

### Case Nos. A07A1016, A07A1017, A07A1018

2. In the cross-appeals, the game owners present identical issues. Specifically, they argue that the court erred in finding that the four condemned machines were gambling devices. The owners contend the four machines were designed and manufactured for bona fide amusement purposes only and do not violate the rewards provisions of OCGA § 16-12-35 (d). For the reasons discussed in Division 1 (b), supra, we conclude the evidence adduced with respect to the four machines reveals that the State carried its burden of showing by a preponderance of the evidence that each of the four machines was capable of rewarding a player with cash or noncash merchandise in excess of $5 for a single play of the game or device. The superior

Roy Barnes described the proliferation of gambling devices in Georgia as a "cancer" spreading throughout the state. Cheralynn M. Gregoire, Note, Peach Sheets, Crimes and Offenses, 19 Ga. St. U. L. Rev. 105, 109 (2002).

[6] "[I]n all nonjury trials in courts of record . . . [the court's f]indings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." OCGA § 9-11-52 (a).

court properly held that the machines were subject to condemnation. See Division 1, supra. The superior court's final order and judgment with respect to these four machines is, therefore, affirmed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., concurs. Adams, J., concurs specially.*

ADAMS, Judge, concurring specially.

I concur specially because I disagree with the majority's reasoning but find the games to be illegal for a different reason. The machines are illegal gambling devices because, even under the defendants' description of how the games work, they allow a player to redeem more than allowed for a single play of the game, and, accordingly, the games do not meet the definition in OCGA § 16-12-35 of machines designed for bona fide amusement purposes.

The defendants' expert Michael Pace testified that the games are run with computer software, some of which he himself programed in a specific attempt to create games that complied with the very statutes at issue in this case. He testified regarding the redemption feature of all the games at issue. He offered an example of how the feature worked. He explained that on the first play of a game, which might cost $1 to play, a lucky player could win 100 points, which are denominated as dollars on the game screen. If the player were to hit the redeem button and cash out at this point, he would receive a voucher worth $5 of merchandise. The machine keeps track of the number of plays and ensures that because the player has only played once, he is limited to redeeming this amount. This redemption complies with OCGA § 16-12-35 (d) (1) and (2), which prohibit bona fide amusement games from allowing a player to redeem points or other evidence of winnings and exchange them for noncash rewards worth more than $5 "for a single play of the game or device."

Pace went on to explain that even if you hit the redeem button at that point, the machine would keep track of the fact that you still had 95 points/dollars and that these points are carried over to another game if you chose to spend another $1 or won one or more free replays during your first play. This provision also complies with provisions of the law that allow bona fide amusement games to accumulate winnings for successful play and accumulate points by accrual on the machine or device. OCGA § 16-12-35 (d) (2). The law also allows players to win an unlimited number of free replays. OCGA § 16-12-35 (b), (d). So far so good.

In Pace's example, the player decided to continue in the second game, and he or she spent another $1 to play. But in this game, the player only won one point/dollar. In other words, the player netted nothing in that game. Nevertheless, the player could hit redeem at this point and receive another $5 voucher. This is so because the

game is designed to determine how many accumulated points/dollars remain and if sufficient points remain, award another $5 because the player has now played another game. In other words, the computer took some of the "winnings" from game one and paid them out in game two even though the player won nothing in game two. The machine would then know that the player's accumulated winnings has been reduced to $90. A player could then play eight games in a row, for example, winning nothing in each game, then press redeem and receive a voucher for eight times $5, or $40. Pace added, "If you have played ten games and won $1,000, . . . you are only going to be able redeem a $50 certificate from that machine until further games are played on the machine." To summarize, the example player won $100 in game one, won nothing in the next nine games, yet the machine allowed the player to redeem the entire winnings from game one.

In Pace's opinion, this averaging technique complies with Georgia law, and the trial court relied on Pace's reasoning. I disagree. Under the example given above, it is plain to see that the player won $100 in "a single play of the game or device" and collected it all. He did so by collecting $5 vouchers in games in which he in fact won nothing. Thus, the game violates the letter and intent of the law.

The accumulation provision of the statute is no refuge for the defendants. It provides:

> A player of bona fide coin operated amusement games or devices described in paragraph (1) of this subsection may accumulate winnings for the successful play of such bona fide coin operated amusement games or devices through tokens, vouchers, points, or tickets. Points may be accrued on the machine or device. A player may carry over points on one play to subsequent plays. A player may redeem accumulated tokens, vouchers, or tickets for noncash merchandise, prizes, toys, gift certificates, or novelties so long as the amount of tokens, vouchers, or tickets received does not exceed $5.00 for a single play.

OCGA § 16-12-35 (d) (2).

Nothing in this paragraph can be construed as allowing the type of averaging performed by the games when calculating the redemption. In addition to free replays, subsection (d) (1) (B) provides that a bona fide amusement game may "reward" a player with noncash merchandise with a "wholesale value of not more than $5.00 received *for a single play* of the game or device." (Emphasis supplied.) Subsection (d) (1) (C) provides that the games may also "reward" "evidence of winnings," in the form of points, tokens,

vouchers, or tickets, which may be exchanged for free replays or the same limited noncash merchandise. Subsection (d) (2) merely provides that the games may "accumulate *winnings* for the *successful play*" of the games, that these accumulated winnings may accrue on the machine and be carried over to subsequent plays, and that these accumulated winnings may be redeemed. (Emphasis supplied.) The final line of subsection (d) (2) reiterates that a player may redeem the accumulated winnings so long as they "do[ ] not exceed $5.00 for a single play." OCGA § 16-12-35 (d) (2).

We are reminded that when interpreting statutes, we must "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Read as a whole and construing the statute in this light, I would hold that OCGA § 16-12-35 (d) prohibits the averaging system described by Pace. Rather, it strictly provides that players are prohibited from redeeming *winnings* of more than $5 for a single play. The machines may, for amusement purposes, show the player that he or she has won any number of points or game dollars in a single game, carry them over to subsequent games, and accumulate them from game to game. But for the purposes of redemption, the machines may only accumulate the actual winnings of a maximum of $5 per play of the game. Thus, in the example offered by Pace, the player may win 100 points or game "dollars" in game one, but regardless of how many times the player replays (with or without new consideration), he or she may never redeem more than $5 for that initial game nor later redeem any of the remaining winnings from game one in any other game. If the player played nine times thereafter and won nothing in each play, he or she could only redeem $5 at the end of the ten-game session.

I disagree with the majority's definition of "a single play of the game or device." The definition would necessarily exclude free replays, which are plainly allowed under the statute. See OCGA § 16-12-35 (b), (d) (1). The majority opinion also appears to limit how many game points or "dollars" can be awarded on the game screen. Points awarded on the screen are not regulated by the statute; the limitation in the statute is on the value of rewards issued by the machine per play of the game. Finally, requiring a player to cash out every time they have accumulated a $5 voucher is not required under the statute.

DECIDED JUNE 25, 2009 —
RECONSIDERATIONS DENIED JULY 15, 2009 ▮

*Patrick H. Head, District Attorney, Amelia G. Pray, Christopher*

*W. Timmons, Samuel W. Lengen, Assistant District Attorneys*, for appellant.

*Spix & Krupp, Mark V. Spix, Begner & Begner, Alan I. Begner, Wimberly, Lawson, Steckel, Schneider & Stine, Les A. Schneider, Paul Oliver, Jacqueline D. Joslyn, Rhonda L. Klein, Balch & Bingham, Michael J. Bowers, Howard J. Manchel*, for appellees.